CA No. 22-10326

# In the
# United States Court of Appeals
## For the Ninth Circuit

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEPHON JAMES WHITNEY,

Defendant-Appellant.

On Appeal from the United States District Court
for the District of Nevada

**DC No. 2:21-cr-00002-JAD-NJK (Hon. Jennifer A. Dorsey, J.)**

**GOVERNMENT'S ANSWERING BRIEF**

JASON M. FRIERSON
United States Attorney

ROBERT L. ELLMAN
Appellate Chief

PETER H. WALKINGSHAW
Assistant United States Attorney
District of Nevada
400 South Virginia, Suite 900
Reno, NV 89501
(775) 784-5438
*Attorneys for the United States*

Date submitted: October 11, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... vi

I.   STATEMENT OF JURISDICTION AND BAIL STATUS .................. 1

II.  ISSUES PRESENTED FOR REVIEW .................................................. 2

    1.   Whether the district court correctly imposed an enhancement to Whitney's sentencing guidelines calculation on the grounds that he illegally possessed a gun in connection with another felony.

    2.   Whether the district court correctly calculated Whitney's criminal history category as part of its sentencing guidelines analysis.

    3.   Whether the district court adequately explained the sentence it imposed.

    4.   Whether the district court correctly imposed two conditions of supervised release.

    5.   Whether 18 U.S.C. § 922(g)(1) is constitutional.

III. STATEMENT OF THE CASE AND OF THE FACTS ........................ 2

    A.   During a Parole Search of Whitney's Apartment, Officers Find Evidence that Whitney Is Dealing Cannabis, Which Whitney Admits, and a Gun, the Presence of Which Whitney Admits He Was Aware of........................................................................... 2

    B.   Clark County District Court Revokes Whitney's Probation for Possession of a Controlled Substance with Intent to Distribute..... 5

    C.   A Grand Jury Indicts Whitney for Being a Felon In Possession of a Firearm, and He Pleads Guilty Without a Plea Agreement. ...... 5

D.    The Probation Office Recommends Enhancing Whitney's Sentence for Possessing the Gun in Connection with Another Felony, and the Parties Brief the Appropriate Calculation Under the Sentencing Guidelines. ........................................................ 6

E.    The District Court Holds a Contested Sentencing Hearing, Overrules Whitney's Objections, But Chooses to "Vary Down Significantly" When Imposing Sentence. .................................... 9

IV.   SUMMARY OF ARGUMENT ........................................................ 14

V.   ARGUMENT ................................................................................. 17

A.    The District Court Correctly Increased Whitney's Offense Level For Having Possessed the Gun in Connection with Marijuana Districution ............................................................................ 17

1.    Legal Standards ............................................................. 17

2.    The Record Supports the District Court's Conclusion that Whitney Possessed the Gun in Connection with Marijuana Distribution .................................................................... 21

3.    The District Court Did Not Err, Let Alone Plainly Err, By Relying on the Commentary to U.S.S.G. § 2K2.1(b)(6)(B). ........................................................... 26

i.    The Record Does Not Support Whitney's Claim that the District Court Relied Solely on the Proximity of the Gun and the Drugs When Applying the Enhancement. ................ 29

ii.    This Court's Precedent Holding that the Commetary to U.S.S.G. § 2K2.1(b)(6)(B) is Binding Remains Correct.... 30

B.    The District Court Correctly Determined Whitney's Criminal History Category. .................................................................... 36

1.    Legal Standards ............................................................. 36

2.   The District Court Properly Included Whitney's Cocaine Possession Conviction in its Criminal History Calculation. ........................................................................ 37

3.   The District Court Did Not Err, Let Alone Plainly, In Including Whitney's Misdemeanor Conviction for Failure to Register His Address as a Felon ....................................... 41

C.   The District Court Adequately Explained the Sententence It Imposed. ..................................................................... 43

1.   Legal Standards ............................................................. 43

2.   The District Court Adequately Explained Its Sentence. .... 44

D.   The District Court Properly Imposed a Gang Affiliation Prohibition As Part of Whitney's Conditions of Supervised Release, But the Court Should Order a Limited Remand for the District Court to Amend the Mental Health Condition. ............. 47

1.   Legal Standards ............................................................. 47

2.   The Court Should Uphold the Gang Affiliation Prohibition Because the Condition Is Valid and Therefore No Error is "Plain." .......................................................................... 48

3.   The Court Should Order a Limited Remand So the District Court May Amend the Mental Health Treatment Condition ........................................................................ 50

E.   Whitney's Conviction Does Not Violate the Second Amendment. ..................................................................... 51

1.   Standard of Review ....................................................... 51

2.   Whitney's Claim is Foreclosed by Binding Circuit Precedent. ..................................................................... 51

3.      This Court's Precedent Holding That the Federal
        Prohibition on Felons Carrying Weapons Comports with the
        Second Amendment Is Correct.......................................... 56

4.      The District Court Made No Clear or Obvious Error in
        Accepting Whitney's Guilty Plea and Entering
        Judgment. ....................................................................... 60

VI.   CONCLUSION ................................................................................ 62

VII.  STATEMENT OF RELATED CASES ............................................. 63

      CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985) ............................ 25

*Apache Stronghold v. United States*, 38 F.4th 742 (9th Cir. 2022) ...................... 53

*Class v. United States*, 138 S. Ct. 798 (2018) .................................................... 51

*D.C. v. Wesby*, 583 U.S. 48 (2018) .................................................................. 30

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................... *passim*

*Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208 (9th Cir. 2019) ....... 53

*Folajtar v. Att'y Gen.*, 980 F.3d 897 (3d Cir. 2020) ......................................... 59

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) .................................. 51

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ....................................................... *passim*

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) ..................... 52, 53, 54, 55

*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) ............................................. 53

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ............. *passim*

*NLRB v. Noel Canning*, 573 U.S. 513 (2014) ............................................... 59, 60

*Puckett v. United States*, 556 U.S. 129 (2009) ............................................. 18, 21

*Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) .............................................. 60

*Richardson v. Ramirez*, 418 U.S. 24 (1974) .................................................... 58

*Rita v. United States*, 551 U.S. 338 (2007) .................................................... 43

*Rodriguez v. AT & T Mobility Servs.*, 728 F.3d 975 (9th Cir. 2013) .................. 53

*Smith v. United States*, 508 U.S. 223 (1993) ........................................ 31, 33, 34

*Spencer v. Kemna*, 523 U.S. 1 (1998) ................................................................ 58

*Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) .................. 58

*United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009)............... 7, 10, 38, 40

*United States v. Alli-Balougun*, 72 F.3d 9 (2d Cir. 1995) .............................60, 61

*United States v. Alvirez*, 831 F.3d 1115 (9th Cir. 2016)...............................18, 28

*United States v. Bena*, 664 F.3d 1180 (8th Cir. 2011) ...................................... 56

*United States v. Benitez-Perez*, 367 F.3d 1200 (9th Cir. 2004) ........................... 20

*United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) .............................48, 49

*United States v. Carpio-Leon*, 701 F.3d 974 (4th Cir. 2012) ............................ 57

*United States v. Carter*, 560 F.3d 1107 (9th Cir. 2009)..................................... 44

*United States v. Casarez-Bravo*, 181 F.3d 1074 (9th Cir. 1999)......................... 20

*United States v. Charles*, 581 F.3d 927 (9th Cir. 2009)..................................... 20

*United States v. Chi Mak*, 683 F.3d 1126 (9th Cir. 2012) ................................. 51

*United States v. Contreras-Hernandez*, 628 F.3d 1169 (9th Cir. 2011) ...........43, 44

*United States v. Evans*, 883 F.3d 1154 (9th Cir. 2018)..................................... 49

*United States v. Gonzalez-Aparicio*, 663 F.3d 419 (9th Cir. 2011) ........... 18, 19, 49

*United States v. Halamek*, 5 F.4th 1081 (9th Cir. 2021) .............................36, 37

*United States v. Howard*, 894 F.2d 1085 (9th Cir. 1990) .................................. 45

*United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) .................................... 60

*United States v. Jackson*, 697 F.3d 1141 (9th Cir. 2012)....................................20

*United States v. Jimenez*, 258 F.3d 1120 (9th Cir. 2001) ................................20

*United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001).....................................11

*United States v. Loney*, 219 F.3d 281 (3d Cir. 2000).......................................34

*United States v. Madrid-Becerra*, 14 F.4th 1096 (9th Cir. 2021).......................36

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009)...............................52

*United States v. Mix*, 457 F.3d 906 (9th Cir. 2006) ........................................43

*United States v. Neal*, 776 F.3d 645 (9th Cir. 2015)........................................20

*United States v. Nelson*, 137 F.3d 1094 (9th Cir. 1998)...................................25

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022) ...................17, 48, 50, 62

*United States v. Parlor*, 2 F.4th 807 (9th Cir. 2021)...................................27, 30

*United States v. Perez*, 5 F.4th 390 (3d Cir. 2021) .....................................*passim*

*United States v. Pruess*, 703 F.3d 242 (4th Cir. 2012) .....................................52

*United States v. Rangel*, 697 F.3d 795 (9th Cir. 2012) ....................................44

*United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009) .......................................56

*United States v. Romm*, 455 F.3d 990 (9th Cir. 2006).....................................27

*United States v. Rosas*, 615 F.3d 1058 (9th Cir. 2010) ....................................17

*United States v. Roy*, 2023 WL 3073266 (5th Cir. Apr. 25, 2023) ....................60

*United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010) ...................................52

*United States v. Saez*, 796 F. App'x. 616 (11th Cir. 2019) ...................28, 31, 35

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................. 51

*United States v. Scroggins*, 599 F.3d 433 (5th Cir. 2010) ................................. 52

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ................................ 57, 58

*United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007) ............................... 49, 50

*United States v. Spangle*, 626 F.3d 488 (9th Cir. 2010) ............................. 17, 18

*United States v. Tafoya-Montelongo*, 659 F.3d 738 (9th Cir. 2011) ................... 20

*United States v. Taylor*, 487 U.S. 326 (1988) .................................................. 43

*United States v. Thompson*, 32 F.3d 1 (1st Cir. 1994) ....................................... 34

*United States v. Thompson*, 82 F.3d 849 (9th Cir. 1996) ................................... 60

*United States v. Valencia-Barrigan*, 608 F.3d 1103 (9th Cir. 2010) ................... 43

*United States v. Vega*, 545 F.3d 743 (9th Cir. 2008) ........................................ 49

*United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) ..................... 52, 53, 55

*United States v. Walter-Eze*, 869 F.3d 891 (9th Cir. 2017) ............................... 18

*United States v. West*, 643 F.3d 102 (3d Cir. 2011) ................................... 34, 35

*United States v. Yepez*, 704 F.3d 1087 (9th Cir. 2012) ............................... 10, 40

*United States v. Yijun Zhou*, 838 F.3d 1007 (9th Cir. 2016) ............................. 21

*United States v. Young*, 115 F.3d 834 (11th Cir. 1997) .................................... 34

**Federal Statutes**

18 U.S.C. § 922 ...............................................................................*passim*

18 U.S.C. § 924 ........................................................................................ 6

18 U.S.C. § 3231 ................................................................................... 1

18 U.S.C. § 3553 ........................................................................... 11, 43

18 U.S.C. § 3742 ................................................................................... 1

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1865 ................................................................................. 58

**Federal Rules**

Fed. R. App. P. 4 .................................................................................. 1

Fed. R. App. P. 32 ............................................................................. 64

Fed. R. Crim. P. 52 ....................................................................... 20, 51

**Sentencing Guidelines**

U.S.S.G. § 2A6.1 ............................................................................... 20

U.S.S.G. § 2K2.1 ........................................................................... *passim*

U.S.S.G. § 4A1.2 ............................................................... 10, 37, 39, 41

U.S.S.G. Appendix C, Amend. 691 ............................................... 31

**States Statutes**

NRS § 179.1173 ................................................................................ 24

NRS § 207.270 .................................................................................... 7

NRS § 678D.200 ......................................................................... 13, 23

**Other Authorities**

Crimes Act of 1790 § 3 .................................................................. 59

Crimes Act of 1790 § 8 .................................................................. 59

Crimes Act of 1790 § 9 .................................................................. 59

Crimes Act of 1790 § 10 ............................................................... 59

Don B. Kates, Jr., *The Second Amendment: A Dialogue*,
  49 Law & Contemp. Probs. 143 (1986) ................................... 55, 56

Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*,
  62 Tenn. L. Rev. 461 (1995) ...................................................... 57

Saul Cornell, *"Don't Know Much ABout History": The Current Crisis in Second
  Amendment Scholarship*, 29 N. Ky. L. Rev. 657 (2002) ................................. 57

# I.

## STATEMENT OF JURISDICTION AND BAIL STATUS

Defendant-Appellant Stephon Whitney appeals his sentence, conviction, and certain conditions of supervised release imposed pursuant to a judgment of conviction in a criminal case. The district court had jurisdiction under 18 U.S.C. § 3231, and entered judgment on December 13, 2022. 1-ER-2–8.[1] Whitney filed a timely notice of appeal the same day. 3-ER-590–91; *see* Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Whitney is currently incarcerated at FCI Victorville in Victorville, California, with a projected release date of July 8, 2026. *See* https://www.bop.gov/inmateloc/.

---

[1] "ER" denotes Appellant's Excerpts of Record; "OB" denotes Appellant's Opening Brief; "PSR" denotes the Presentence Investigation Report, filed by Whitney under seal.

## II.

## ISSUES PRESENTED FOR REVIEW

6.  Whether the district court correctly imposed an enhancement to Whitney's sentencing guidelines calculation on the grounds that he illegally possessed a gun in connection with another felony.

7.  Whether the district court correctly calculated Whitney's criminal history category as part of its sentencing guidelines analysis.

8.  Whether the district court adequately explained the sentence it imposed.

9.  Whether the district court correctly imposed two conditions of supervised release.

10. Whether 18 U.S.C. § 922(g)(1) is constitutional.

## III.

## STATEMENT OF THE CASE AND OF THE FACTS

A.  **During a Parole Search of Whitney's Apartment, Officers Find Evidence that Whitney Is Dealing Cannabis, Which Whitney Admits, and a Gun, the Presence of Which Whitney Admits He Was Aware of.**

On September 2, 2020, officers with the Nevada Parole and Probation Department searched Whitney's apartment. PSR ¶ 6. At that time, Whitney was on probation after having been convicted of Possession of a Controlled Substance with Intent to Sell, and the terms of his probation included a condition that required him to allow officers to search his home. *Id.* During the search, the officers saw two fully loaded magazines of 9mm ammunition sitting in plain view on the top shelf of a closet in the apartment. PSR ¶ 7.

2

During the search, a detective with the Las Vegas Metropolitan Police Department (LVMPD) interviewed Whitney's girlfriend, Jessica Rodosh, who shared the apartment with Whitney. *Id.* Rodosh told the detective that she did not own any weapons, nor would she allow any weapons in the apartment because her son lived there. *Id.* She told the detective that she was unaware of the loaded magazines. *Id.*

As the search continued, detectives found a 9mm handgun and another fully loaded magazine hidden inside the headboard of the bed in Whitney's bedroom. PSR ¶ 8. On top of the handgun, the detectives found an envelope with $4,450 in cash. *Id.* Investigators also found roughly a half pound of marijuana in the bedroom inside of two jars and a plastic bag. *Id;* 1-ER-81–84. In the laundry area, they found a box of plastic baggies and a digital scale that had a green leafy residue consistent with marijuana. PSR ¶ 8. On the same shelf where the investigators found the baggies and scale, they found more ammunition in a shoebox. 1-ER-82–85.

Detectives gave Whitney a *Miranda* warning and then interviewed him. PSR ¶ 9. At first, Whitney denied any knowledge of the gun and claimed that the marijuana belonged to Rodosh. 2-ER-315–318. He also initially denied that his DNA would be found on the gun. 3-ER-316. However, Whitney eventually admitted that the gun was his and not Rodosh's. 2-ER-275; PSR ¶ 9. Whitney

3

accurately described the gun, including its caliber and color, and where it was located (in the headboard with the cash). 2-ER-375–376. Whitney also accurately told the detective where the marijuana had been hidden. 2-ER-376–377. He said that he couldn't tell the officers where the scale and the box of baggies had been found because he had given them to someone else (presumably Rodosh). 2-ER-378.[2] Yet he was able to tell the detective that the scale and box of baggies would be found together. 2-ER-378.

After providing this information to the detective, Whitney admitted that all of the items the detective had been asking about belonged to him. 2-ER-378 ("All of that belong to me. Everything."); PSR ¶ 9. Whitney explained that he had gone back to selling drugs to make money because that was what he had been taught, and that he had been selling drugs since he was nine years old. 2-ER-379; PSR ¶ 9. Whitney also admitted that the detectives would find his DNA on the gun. 2-ER-386; PSR ¶ 9. After the interview, Whitney was arrested for violating his probation. PSR ¶ 4. A DNA analysis of the gun and the two magazines found Whitney's DNA on each of those items. 3-ER-520.

---

[2]     Whitney's answer regarding to whom he gave the scale and baggies appears to be cut off in the transcript. 2-ER-378.

4

**B.    Clark County District Court Revokes Whitney's Probation for Possession of a Controlled Substance with Intent to Distribute.**

Two days after Whitney's arrest, the Nevada state district court instituted probation revocation proceedings. 2-ER-285. The defense called Rodosh to testify. 2-ER-300. Although Rodosh had told detectives on the day of the search that she had no knowledge of the loaded magazines, and that she would not allow weapons in the house because of her son's presence, Rodosh testified that all of the contraband seized during the search—the gun, the money, the ammunition, and the marijuana—was hers, and that Whitney "probably" did not even know that the marijuana was there. 3-ER-302; 3-ER-305. Despite this testimony, the Nevada district court revoked Whitney's probation in part on the grounds that he had access to a semi-automatic handgun with at least two loaded magazines, and that that the amount of marijuana and other circumstances suggested that the marijuana was being sold, particularly given the large amount of currency found with the gun. 2-ER-309. The Nevada district court revoked Whitney's probation and imposed the previously suspended prison sentence of 18 to 48 months. *Id.*

**C.    A Grand Jury Indicts Whitney for Being a Felon In Possession of a Firearm, and He Pleads Guilty Without a Plea Agreement.**

In January 2021, a federal grand jury sitting in Las Vegas returned a one-count indictment charging Whitney with being a felon in possession of a

firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). 3-ER-587–589. In

June 2022, Whitney pleaded guilty as charged without a plea agreement. 2-ER-

399–418.

In advance of Whitney's change of plea, both the defense and the

government filed memoranda in support of Whitney's guilty plea without a

plea agreement. 3-ER-420–426 (government memorandum); 3-ER-533–536

(defendant's memorandum). The government's memorandum included a

section advising the defendant and the Court that Whitney's possession of the

gun in connection with felony marijuana distribution made the imposition of a

sentencing enhancement appropriate under U.S.S.G. § 2K1.1(b)(6)(B). 3-ER-

423.

**D.     The Probation Office Recommends Enhancing Whitney's Sentence for
        Possessing the Gun in Connection with Another Felony, and the
        Parties Brief the Appropriate Calculation Under the Sentencing
        Guidelines.**

Prior to sentencing, the United States Probation Office prepared a

presentence investigation report recommending that the Court enhance

Whitney's sentence pursuant to U.S.S.G. § 2K1.1(b)(6)(B) because Whitney

had possessed the gun in connection with another felony offense. PSR ¶ 17.

The defense objected to this enhancement, arguing insufficient evidence to

conclude that Whitney had possessed the gun in connection with marijuana

sales, largely citing Rodosh's claims that the contraband was hers. PSR at p.

6

28. Probation declined to amend its guideline calculation, reasoning that Whitney's admissions regarding the marijuana, the large quantity, and the presence of the sandwich bags and digital scale with marijuana residue constituted sufficient evidence to conclude Whitney possessed the gun in connection with marijuana distribution. *Id.*

Whitney also objected that the calculation of his criminal history score included a prior conviction for Possession of a Drug Not for Interstate Commerce (Cocaine), because he had successfully moved to amend that conviction to "Loitering about a School or Public Place" in violation of NRS § 207.270. PSR at p.28. The probation office also declined to amend its criminal history category calculation, because Whitney had pleaded guilty to the offense described in the PSR, and his conviction was not vacated because of errors of law or because subsequently discovered evidence exonerated him. PSR at p. 28, *citing United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009).

After the probation office declined to sustain his objections to the PSR, Whitney filed a sentencing memorandum reiterating his argument that the evidence was insufficient to conclude he had possessed the gun in connection with marijuana distribution. 2-ER-258–73. Whitney subsequently filed a supplemental memorandum disputing the calculation of his criminal history category on the basis of the cocaine possession offense, and made several

7

arguments for a downward variance, including a series of representations by counsel that Whitney's federal case had interfered with his state parole. 2-ER-224–240.

The government responded, arguing that the enhancement for gun possession in connection with another felony was proper, that Whitney's criminal history score was properly calculated, and that a downward variance was inappropriate. 2-ER-208–223. Specifically, the government argued that Whitney's admission that he had been selling marijuana, coupled with the objective physical evidence of marijuana distribution (i.e., the quantity found, and the digital scale and baggies located in the apartment), and the fact that the gun was found in the same room as the marijuana and the cash, was more than sufficient to prove that Whitney possessed the gun in connection with felony marijuana possession. 2-ER-213–214. Moreover, the government noted that the only countervailing evidence offered by the defense was Rodosh's facially incredible statement. 2-ER-215–217. The government also argued that the calculation of Whitney's criminal history category properly included the cocaine possession offense, since the judgment in that case was not amended on the basis of errors of law or on evidence that exonerated Whitney. 2-ER-218. While the judgment had been amended in state court by agreement of the parties, the government noted that the probable cause arrest documents and

criminal complaint, among other documents, were all consistent with Whitney's commission of the cocaine possession offense. *Id.* Finally, on the basis of Whitney's lengthy criminal history, and the fact that the instant offense had been committed while he was on probation for a previous drug distribution conviction, the government argued that the district court should sentence Whitney to a 110-month term of custody. 2-ER-221.

**E.    The District Court Holds a Contested Sentencing Hearing, Overrules Whitney's Objections, But Chooses to "Vary Down Significantly" When Imposing Sentence.**

On November 7, 2022, the district court held a hearing to take evidence on the sentencing issues that the parties disputed. 1-ER-64–134. At the hearing, the government offered testimony from Detective Josh Costello, the LVMPD detective who participated in the search of Whitney's apartment and interviewed Whitney. 1-ER-71–122. Detective Costello testified consistently with the account of the search and what was found as contained in the police reports and in the PSR. *Id.* The government also offered a series of photographs of Whitney's apartment and the contraband seized on the day of the search (1-ER-86), the property report listing the items seized during that search (1-ER-89), Detective Costello's declaration of arrest (1-ER-96), and the transcript of Detective Costello's interview with Whitney (1-ER-96–97).

9

Whitney did not offer any evidence at the hearing, on either the issue of the sentencing enhancement or on the issue of the federal case's alleged interference with his state parole. While Whitney's attorney referenced Rodosh's testimony from Whitney's state parole revocation hearing, Whitney did not call Rodosh to testify or offer her for cross examination. 1-ER-129. Following Detective Costello's testimony and argument from the parties, the district court continued the sentencing hearing. 1-ER-133.

On December 5, 2022, the hearing resumed. 1-ER-9. The district court began by resolving the outstanding objections to the PSR. 1-ER-11. First, the district court held that Whitney's criminal history score properly included his conviction for cocaine possession. 1-ER-19. In doing so, the district court relied on this Court's decisions in *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009) and *United States v. Yepez*, 704 F.3d 1087 (9th Cir. 2012) (en banc), as well as the commentary contained in U.S.S.G. § 4A1.2, note 6. 1-ER-20. In overruling the objection, the district court noted that, in the absence of errors of law or evidence indicating a defendant's innocence, it detected "the same odor of gaming the federal sentencing system" in the amended judgment as this Court had observed in *Alba-Flores*. 1-ER-20. However, while the district court held that Whitney's cocaine possession conviction should formally count towards his criminal history score, it also informed the parties that it would

10

"consider those objections and everything that [Whitney's counsel] has explained as essentially an argument about overrepresentation of criminal history" when the time came for the court to apply the factors under 18 U.S.C. § 3553(a) and impose sentence. 1-ER-20.

The district court also overruled Whitney's objection to the application of the four-level enhancement for possession of the gun in connection with another felony offense. 1-ER-21. Applying the factors under *United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001), the district court concluded that the applicable standard of proof was preponderance of the evidence, and that the government had met that standard. *Id.* While the district court acknowledged that Whitney had an innocent explanation for the presence of all the various items of contraband in the apartment, it explained that it was "not persuaded that the marijuana was the personal-use stock of the defendant's fiancée" reasoning in part that "[t]he manner and places in which it was hidden are inconsistent with the way in which a mother who was purportedly concerned with her children's safety would store such a substance for personal use." 1-ER-22. The district court found that "the quantities, how the pot was stored, the baggies, the scale, and the cash stashed with the handgun, and the proximity of all of these items to one another in this small apartment" were sufficient to prove that "the defendant was possessing this firearm in

11

connection with the possession of marijuana with intent to distribute it." *Id.*
The district court further noted that "even if [it] were to apply a clear-and-convincing standard here, I would still find that the enhancement would apply as the evidence reaches that level…as well." *Id.*

Setting aside the objections that Whitney had reserved, the parties agreed that Whitney's total offense level was 25 and that his prior convictions gave him a criminal history score of 11, placing him in Criminal History Category V. 1-ER-23. This placed Whitney's recommended sentencing range under the guidelines at 100-125 months. The district court then heard argument from the parties as to the appropriate sentence. The government reiterated its arguments that given his criminal history a substantial sentence was necessary to deter Whitney from committing future crimes, and recommended a sentence of 100 months, the low end of the guideline range. 1-ER-25. Probation concurred in this recommendation. 1-ER-56.

Whitney's counsel urged a sentence of 28 months. 1-ER-25. Whitney continued to dispute that the marijuana found in his apartment belonged to him and that he was selling it. 1-ER-26. Among other arguments, Whitney's counsel repeated her representations that Whitney's federal case had interfered with his state parole, but also expressed uncertainty as to whether Whitney had

12

been paroled or if his sentence had expired, or whether he was at that time in primary state custody or primary federal custody. 1-ER-31.

After hearing allocution from Whitney, the district court heard a statement from Rodosh. Rodosh reiterated her claims that the gun belonged to her and that she had purchased the marijuana found in the apartment. 1-ER-49. Notably, Rodosh reiterated a claim that she had purchased the half pound of marijuana from a dispensary because she did not want to make subsequent trips. 1-ER-50.[3]

After hearing an additional statement from Whitney's mother, the district court imposed sentence. The district court decided to "vary downward significantly," largely on the basis that it found Whitney's criminal history overrepresented, as it indicated it would when it had held that Whitney's cocaine possession conviction would be counted towards his criminal history. 1-ER-58–59. The district court imposed a sentence of 54 months, which was below the applicable sentencing guidelines range for Whitney's offense level at any criminal history category. 1-ER-59.

---

[3]     The current maximum quantity that a customer can legally purchase from a cannabis dispensary in Nevada is one ounce, less than one eighth of what the police recovered from Whitney's apartment. NRS § 678D.200(3)(d). Whitney concedes as much in his brief, but speculates that "[t]he dispensary was perhaps selling more than the authorized limit under state law…." OB at 23.

The district court then inquired if the defense had any objections to the conditions of supervised release contained in the PSR. 1-ER-59–60. After conferring with counsel, Whitney offered no objection to the conditions proposed in the PSR. 1-ER-60. The district court then imposed the conditions, finding them reasonably related to the goals of deterrence, protection of the public, and rehabilitation, and that they involve no greater deprivation of liberty than is reasonably necessary to achieve those goals. 1-ER-60.

This appeal followed.

## IV.

## SUMMARY OF ARGUMENT

Whitney asks this Court to vacate his sentence on the ground that there was insufficient evidence to establish that he possessed the gun in this case in connection with a felony drug offense such that a four-level guidelines enhancement applies. Yet when investigators searched his home, they found the gun, a large stack of cash, and the drugs all in his bedroom, and a digital scale and baggies (classic evidence of drug distribution) adjacent to the bedroom. When asked about this evidence, Whitney admitted "[a]ll of that belong to me. Everything." He made further statements to the investigators that he had been selling drugs to make ends meet and did not know what else

14

to do. The evidence here is more than sufficient to establish Whitney possessed the gun in connection with a felony offense.

Whitney also objects for the first time on appeal that the district court relied solely on the proximity of the gun to the drugs to apply the enhancement, but the record demonstrates that the district court relied on the totality of the circumstances to conclude Whitney possessed the gun in connection with the drug offense. Furthermore, this Court's precedents correctly hold that a district court may properly apply the enhancement in question whenever a gun is possessed by a prohibited person in close proximity to drugs used in a drug offense. Whitney cannot establish plain error here, especially considering that both courts to consider the argument he offers here have rejected it.

Whitney further objects that the district court included a prior conviction that he had previously successfully moved to amend in its calculation of his criminal history category. But commentary to the applicable sentencing guidelines and this Court's precedents make clear that prior convictions set aside for reasons other than factual innocence or errors of law still count towards a defendant's criminal history score, and Whitney does not claim that his motion to amend was predicated on either of these bases. Whitney also complains that the district court included a minor nonqualifying offense

towards his criminal history score, but he failed to object to the inclusion of this offense before the district court and cannot establish plain error.

Whitney also asserts that the district court procedurally erred by not explicitly addressing his argument at sentencing that his state parole was delayed by this federal case, and that therefore he should be granted a downward variance in his sentence because he was ineligible to accrue credit for time served during the period of delay. Whitney's claims regarding this issue were unclear and unsupported by evidence before the district court, and they remain so here. The district court did not err in declining to address Whitney's largely speculative argument. Moreover, because Whitney failed to object to the district court's explanation below, this Court reviews for plain error. Whitney cannot establish that his substantial rights were affected by the district court's explanation of his sentence, because it clearly inquired about and considered the time he spent in state custody while fashioning the sentence for his federal case. This claim therefore fails as well.

Whitney objects, also for the first time on appeal, to two conditions of supervised release. The gang affiliation condition to which Whitney complains is clearly valid under this Court's precedents and should be affirmed, particularly on plain error review. Because language in Whitney's mental health treatment provision conflicts with this Court's intervening precedent in

16

*United States v. Nishida*, the Court should order a limited remand so the district court can conform the condition to that precedent.

Finally, Whitney asserts, again for the first time before this Court, that his conviction for being a felon in possession of a firearm is unconstitutional under the Second Amendment. But this Court's precedent holds that this statute does not run afoul of the Second Amendment, and that precedent is consistent both with intervening Supreme Court precedent and a long historical tradition of limiting gun rights to law abiding citizens. The district court did not err, let alone plainly, in imposing a judgment of conviction on Whitney. This Court should affirm that judgment.

## V.

## ARGUMENT

### A. The District Court Correctly Increased Whitney's Offense Level For Having Possessed the Gun in Connection with Marijuana Distribution.

#### 1. Legal Standards

This Court reviews "the district court's application of the Sentencing Guidelines to the facts of [the] case for abuse of discretion, and the district court's factual findings for clear error.' " *United States v. Rosas,* 615 F.3d 1058, 1066 (9th Cir. 2010) (alteration in original). A district court does not clearly err

17

unless its findings are "illogical, implausible, or without support in the record." *United States v. Spangle*, 626 F.3d 488, 497 (9th Cir. 2010).

Ordinarily, the district court's interpretation of the Sentencing Guidelines is reviewed *de novo*. *United States v. Alvirez*, 831 F.3d 1115, 1120-21 (9th Cir. 2016). But when the defendant fails to object, as Whitney failed to do when the district court was construing U.S.S.G. § 2K2.1(b)(6)(B), review is for plain error. *Id.* at 1121. To succeed on a claim of plain error, the defendant must show "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected [defendant's] substantial rights, which in the ordinary case means it affected the outcome of the district-court proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Walter-Eze*, 869 F.3d 891, 911 (9th Cir. 2017) (citation omitted).

"To be plain, the error must be clear or obvious, and an error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011) (en banc) (citation and internal quotation marks omitted). Plain error "is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Id.* (citation and internal quotation marks omitted); *see Puckett v.*

18

*United States*, 556 U.S. 129, 135 (2009) (for an error to be plain, "the legal error must be clear or obvious, rather than subject to reasonable dispute").

This Court has indicated that it has the discretion to apply the *de novo* standard of review even in the absence of an objection "where the appeal presents a pure question of law and there is no prejudice to the opposing party." *Gonzalez-Aparicio*, 663 F.3d at 427 (collecting cases). In this case, as in *Gonzalez-Aparicio*, the Court should apply the plain error standard and not exercise its discretion to review *de novo*. In *Gonzalez-Aparicio*, the Court applied the regular plain error standard, rather than the exception, because the law at issue in that case was confusing and perhaps even conflicting. *Id.* The Court concluded that "a reasoned decision from the District Court, made after the parties have presented their respective positions, would assist us in deciding the difficult legal question [at issue]. The failure to object, however, means that we have been denied such valuable assistance." *Id.*

The same rationale applies here. Whitney's argument that the guidelines commentary construing U.S.S.G. § 2K2.1(b)(6)(B) is invalid (OB at 30-35) is apparently an issue of first impression in this Circuit. The Court would have benefited from a reasoned assistance of an experienced district court judge on this matter. Indeed, this Court has repeatedly applied the plain error standard

19

when reviewing unpreserved guideline interpretation and sentencing

enhancement arguments on appeal.[4]

Moreover, the Court's "question of law" exception contravenes the

Supreme Court's interpretation of Federal Rule of Criminal Procedure 52(b).[5]

The Supreme Court has "repeatedly cautioned that [a]ny unwarranted

---

[4]     *See, e.g., United States v. Neal*, 776 F.3d 645, 659 (9th Cir. 2015) ("Neal
argues that the court should not have applied the two-level, multiple lien
enhancement under U.S.S.G. § 2A6.1(b)(2)(B) ('Offense Specific Guideline')
to his sentence. Instead, he argues, the Offense Specific Guideline only allows
application of the multiple lien enhancement when there are multiple offenses
against the same victim. ... Because Neal did not raise this objection in the
district court, we review the district court's application of the Sentencing
Guidelines for plain error."); *United States v. Jackson*, 697 F.3d 1141, 1145 (9th
Cir. 2012) ("Appellant did not raise the specific Guideline-interpretation
argument that he now raises on appeal. We therefore apply a plain-error
standard."); *United States v. Tafoya-Montelongo*, 659 F.3d 738, 741-42 (9th Cir.
2011) ("Tafoya-Montelongo did not argue that his prior crime did not
constitute a 'crime of violence.' Because Tafoya-Montelongo did not argue
below that his conviction for the attempted sexual abuse of a minor did not
qualify as a crime of violence, we review the issue for plain error."); *United
States v. Charles*, 581 F.3d 927, 932-33 (9th Cir. 2009) ("We conclude that
Charles did not preserve for appeal his claim that he is not subject to the career
offender enhancement and that, accordingly, plain error is the proper standard
of review [,]" rejecting the defendant's argument that *de novo* review should
apply); *United States v. Benitez-Perez*, 367 F.3d 1200, 1206 (9th Cir.
2004) ("district court's application of the incorrect guideline provision did not
constitute 'plain error' in this case"); *United States v. Jimenez*, 258 F.3d 1120,
1126 (9th Cir. 2001); *United States v. Casarez-Bravo*, 181 F.3d 1074, 1078 (9th
Cir. 1999) ("Because Casarez-Bravo did not object to being sentenced under
the career offender provision before the district court, we must subject his
claim to a plain error analysis.").

[5]     "A plain error that affects substantial rights may be considered even
though it was not brought to the court's attention."

extension of the authority granted by Rule 52(b) would disturb the careful balance it strikes between judicial efficiency and the redress of injustice ... and that the creation of an unjustified exception to the Rule would be [e]ven less appropriate." *Puckett*, 556 U.S. at 13536 (citation and internal quotation marks omitted). Indeed, one Judge of this Court has recognized that the "pure question of law" exception to plain error review is not appropriate. *United States v. Yijun Zhou*, 838 F.3d 1007, 1017 (9th Cir. 2016) (Graber, J., concurring) ("In sum, our line of the cases permitting an exception for 'pure questions of law' is contrary to [Federal Rule of Criminal Procedure] 52(b), Supreme Court precedent, and the practice of our sister circuits ....We ought to reconsider our errant line of cases en banc, either now or in a future appropriate case." (footnote omitted)).

### 2. The Record Supports the District Court's Conclusion that Whitney Possessed the Gun in Connection with Marijuana Distribution.

The district court did not err in finding that the marijuana found in Whitney's apartment was for distribution, and that Whitney possessed the gun in connection with that distribution. The record is not reasonably susceptible to any other conclusion. Detectives found over a half pound of marijuana in Whitney's apartment, which as noted by Detective Costello is a larger quantity than what would be consistent with personal use. 1-ER-86. In that same

bedroom, investigators found a loaded gun with an additional magazine, and several thousand dollars in cash hidden in the headboard of Whitney's bed. 1-ER-105–106. Immediately outside the bedroom where the gun, cash, and marijuana were found, detectives found a digital scale and small, clear bags (1-ER-84)—well-established tools of a drug distribution enterprise. Next to that digital scale and those bags, detectives found two boxes of bullets containing seventy rounds. 1-ER-126; 3-ER-516.

When confronted with these discoveries, after initially denying culpability, Whitney eventually admitted that "[a]ll of that belong to me. Everything." 2-ER-378. Furthermore, Whitney accurately told the detectives where the gun, cash and drugs were hidden, and accurately described the gun. 2-ER-375–377. After admitting his knowledge of the gun and drugs, Whitney confessed that he had been selling drugs because that is what he had been taught to do. 2-ER-379. And he (correctly) acknowledged that investigators would find his DNA on the gun. 3-ER-316; 3-ER-520.

Against all of this evidence, Whitney can only offer Rodosh's facially incredible account that the contraband all belonged to her, and a series of strained inferences that he claims undermine the obvious conclusion that Whitney was selling marijuana and that the purpose of the gun was to protect his stash of drugs and cash. OB at 15-30. Whitney describes Rodosh's claims

as "overwhelmingly" demonstrating that the contraband belonged to her (OB at 15, 21), and describes her claim that the gun was hers as "uncontradicted." OB at 20. But those claims were directly contradicted by Whitney's own assertion on the day of the search that all of the contraband belonged to him (2-ER-378), and by Rodosh's own prior assertion that she had no idea that weapons or ammunition were in the house, and that she would not have tolerated the presence of such items in the home for fear of endangering her child. PSR ¶ 7.

Indeed, Rodosh's account provides reason to doubt nearly every aspect of her claim that she owned all of the contraband. Rodosh claimed to have purchased the marijuana at a dispensary (1-ER-50), but as noted above and conceded by Whitney (OB at 23), the roughly half-pound found in Whitney's headboard was more than eight times the amount dispensaries can legally distribute in Nevada. NRS § 678D.200(3)(d) (limiting recreational sales of marijuana to one ounce). Rodosh even represented to the district court an apparent belief that one can buy a full pound at a dispensary, which suggests her unfamiliarity with recreational marijuana purchases in Nevada and an intention to mislead the district court. 1-ER-49 ("[Y]ou can purchase a pound at a dispensary.").

Rodosh also claimed that the $4,450 in cash was a product of her unemployment benefit. 2-ER-277. But neither Rodosh nor Whitney provided an explanation as to how two people relying solely on unemployment benefits for income would have quantities of cash and marijuana on hand like those found in their bedroom.[6] And with respect to the guns and ammunition, not only did Rodosh initially tell the investigators conducting the search that she had no knowledge of them, and that she would not allow weapons in her home (PSR ¶ 7), but her later explanation that she purchased the gun for home self-defense wholly fails to explain a need for the nearly one hundred rounds of ammunition investigators found in the apartment. 1-ER-105–106 (two loaded magazines in the headboard); 1-ER-126; 3-ER-516 (seventy rounds in the laundry area immediately outside the bedroom).

---

[6]     Whitney argues that this Court should treat the State of Nevada's decision to return the cash to Rodosh as evidence that it was legitimately earned. OB at 25. But the State of Nevada bears the burden of proving that property is subject to forfeiture by clear and convincing evidence. NRS § 179.1173(4). The State's decision not to attempt to meet that burden in court has no bearing on the validity of the district court's decision here. Indeed, the only direct evidence Whitney provides that the cash came from Rodosh's unemployment benefit is an email chain in which Rodosh makes this claim without attached supporting documentation, and in which a state representative notes the documentation to that point *failed* to explain the provenance of the cash. 2-ER-277–278. This email chain is followed by a separate chain in which the State agrees to cut a check to Rodosh for the amount seized, without an explanation as to why. 2-ER-279–281. The record is devoid of any actual evidence regarding a legitimate source of these funds.

Even if Rodosh's story were not incredible on its face, the district was well within its discretion in rejecting it. 1-ER-22 (rejecting Rodosh's account). The district court was presented with two explanations for the contraband found in the apartment and Whitney's confession, and sensibly chose the government's explanation over Whitney's. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985). Moreover, Whitney presented no testimony at the sentencing hearing, declining to put Rodosh on the witness stand, so it is unclear whether this Court can consider Rodosh's story in the first place. But to the extent the district court considered Rodosh's hearsay statements and her unsworn statement to the district court at sentencing, its determination that Rodosh's story was not credible is entitled to special deference here. *United States v. Nelson*, 137 F.3d 1094, 1110 (9th Cir. 1998) ("This court gives special deference to the district court's credibility determinations.").

Beyond Rodosh's account, Whitney offers only strained inferences that he wishes the district court had drawn in his favor. For example, he claims that, despite Whitney's accurate description of the gun and his accurate recounting of where the gun and drugs were found, that he should have been able to provide *more* detail about the gun before the district court concluded

that he possessed it in connection with his drug dealing. OB at 19. Although the gun, cash, and drugs were all found in the bedroom, and testimony from Detective Costello established that the laundry area where the scale and baggies were found was immediately outside the bedroom (1-ER-84), Whitney claims the items "weren't found particularly close together" and therefore should not be considered probative of drug sales "considering the 'small apartment' they were living in." OB at 28. And while Whitney told investigators that the gun was his and that they would find his DNA on it, he now speculates that "Mr. Whitney and Ms. Rodosh lived together, so it would be unsurprising if Mr. Whitney's DNA had been innocuously transferred to the gun." OB at 19. Yet the district court did not find Whitney's accurate statements about the contraband, the proximity of the gun, cash, drugs, and scale, or the presence of Whitney's DNA on the gun to be mere coincidences, as Whitney would have had it. And it was not required to. The Court should decline to substitute Whitney's thin explanations for the district court's considered judgement. It should affirm.

### 3. The District Court Did Not Err, Let Alone Plainly Err, By Relying on the Commentary to U.S.S.G. § 2K2.1(b)(6)(B).

Whitney argues for the first time on appeal that the district court should not have applied a four-level enhancement solely because his gun was found in close proximity to drugs for sale. OB at 30-35. This argument is factually

26

unsupportable, since the district court's application of the enhancement explicitly relied on the "totality of the facts, when combined with…reasonable, logical inferences from those facts" (1-ER-21), and was supported by more than the proximity of the gun to the drugs. The alarming amount of ammunition in the apartment and the facially incredible explanation Whitney and Rodosh provided for the presence of the gun and the drugs in the apartment were more than sufficient for the district court to reasonably infer by a preponderance of the evidence[7] that the purpose of the gun was to protect the stash of cash and drugs in the bedroom. Yet Whitney simply *assumes* that the district court relied solely on the proximity of the gun and the drugs because this Court's precedents hold that, because of binding commentary to the guideline, the enhancement "necessarily applies" when a gun is found in close proximity to drugs used in a drug trafficking felony. OB at 30-31 *citing United States v. Parlor*, 2 F.4th 807, 815 (9th Cir. 2021). Yet even that precedent remains binding and correct, so Whitney's claim here fails as a matter of both law and fact.

---

[7]    Whitney argued below that the enhancement must be proven by clear and convincing evidence, but he makes no such argument before this court in his opening brief, and therefore has abandoned the argument. *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("arguments not raised by a party in its opening brief are deemed waived.").

Nowhere below did Whitney argue that his possession of a gun in close proximity to the drugs he possessed for sale did not satisfy U.S.S.G. § 2K2.1(b)(6)(B)'s requirement that the gun be possessed "in connection with" a felony offense for the guidelines' four-level enhancement to apply. Rather, Whitney argued that the fact that the gun was stored in the same room as the drugs was a "coincidence" (2-ER-272), and that the drugs were not in fact for sale. Because Whitney raises his claim here for the first time, his claim is reviewed for plain error. *Alvirez*, 831 F.3d at 1121. It fails.

Given the circumstantial evidence available, Whitney cannot show that the district court solely relied on the proximity of the gun to the drugs in deciding that the enhancement applied, and therefore cannot show that the error he alleges is plain as a matter of fact or that it affected his substantial rights. Furthermore, the error he alleges is not plain as a matter of law, as this Court's precedent that the enhancement applies when a defendant's gun is found near drugs remains correct and binding. The only courts to consider the claim that the commentary to U.S.S.G. § 2K2.1(b)(6)(B) is not binding have correctly rejected it. *United States v. Perez*, 5 F.4th 390 (3d Cir. 2021); *United States v. Saez*, 796 F. App'x. 616, 619 (11th Cir. 2019) (unpublished). Therefore, even assuming *arguendo* that the district court relied solely on the proximity of

the gun to the drugs in finding the enhancement applied, it would not have erred in doing so, let alone plainly erred. The Court should affirm.

> **i.** *The Record Does Not Support Whitney's Claim that the District Court Relied Solely on the Proximity of the Gun and the Drugs When Applying the Enhancement.*

Absent the objection he makes here for the first time, the district court had no occasion to explicitly place in the factual record all the reasons (in addition to the gun's proximity to the drugs) that it concluded that Whitney possessed the gun in connection with the drug offense. While the district court did reference the proximity of the gun to the drugs and other indicia of drug trafficking as supporting its decision here, in finding that the enhancement applied the district court held that "the totality of the facts, when combined with the reasonable logical inferences from those facts" proved that the gun was possessed in connection with the drug offense. 1-ER-21–22. Whitney may quibble with the logical inferences the district court drew from the facts, but he cannot argue that the district court erred in looking to the totality of the circumstances.

And the totality of those circumstances support the district court's finding. Beyond the fact that the gun was found hidden with Whitney's cash in the same room as the drugs, the sheer number of bullets found in the apartment belie Whitney and Rodosh's assertions that Rodosh had acquired

the gun and ammunition solely for self-protection purposes. And given the facially incredible nature of nearly every aspect of Rodosh's story, the district court was entitled to draw adverse inferences regarding the actual purpose of the gun in the bedroom. *Cf. D.C. v. Wesby*, 583 U.S. 48, 59 (2018) (noting that that one can reasonably infer a guilty mind from a speaker's dishonesty). Therefore, even as alleged, Whitney's alleged error is not factually plain, and did not affect his substantial rights.

> ii.   *This Court's Precedent Holding that the Commentary to U.S.S.G.*
> *§ 2K2.1(b)(6)(B) is Binding Remains Correct.*

Nor would there be any legal error in applying the binding guidelines commentary to U.S.S.G. § 2K2.1(b)(6)(B) here to find that Whitney's possession of the gun was in connection with the drug offense, as that commentary provides authoritative guidance on a guideline provision that is genuinely ambiguous, and that guidance is not unreasonable. *Cf. Kisor v. Wilkie,* 139 S. Ct. 2400 (2019) (courts defer to agency guidance interpreting their own regulations where the regulation interpreted is ambiguous and the interpretation is reasonable). This Court has found the enhancement necessarily applies where the gun in question is found near drugs from a drug offense. *United States v. Parlor*, 2 F.4th 807, 815 (9th Cir. 2021). The only two courts to consider Whitney's argument that U.S.S.G. § 2K2.1(b)(6)(B) is either unambiguous or unreasonably construed by the commentary have rejected

both contentions. *Perez*, 5 F.4th 390; *Saez*, 796 F. App'x at 619 (unpublished). This Court should do the same.

U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level enhancement where a defendant "used or possessed any firearm or ammunition in connection with another felony offense." Prior to November 2006, the Guidelines did not define the phrase "in connection with." The Sentencing Commission explained that it added Application Note 14 to address a conflict among the circuits regarding the interpretation of this provision, "specifically with respect to the use of a firearm 'in connection with' burglary and drug offenses." *See* U.S.S.G. Appendix C, Amendment 691. The Commission noted that it adopted the language in *Smith v. United States*, 508 U.S. 223, 238 (1993), that the enhancement would apply only if the firearm facilitated, or had the potential to facilitate, another felony offense. *Id*.

Application Note 14(A) generally provides that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." Application Note 14(B) provides more specific guidance when the "other offense" is a drug trafficking offense. This application note states that the enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia . . .

because the presence of the firearm has the potential of facilitating another felony offense." Thus, when the other felony offense is drug trafficking, it is presumed that a gun found in close proximity to the drugs at least has the potential to facilitate the drug trafficking offense and satisfies the "in connection with" requirement.

Citing the Supreme Court's recent decision in *Kisor*, 139 S. Ct. 2400, Whitney contends that the Guidelines' commentary is only entitled to deference if the guideline it interprets is genuinely ambiguous. OB at 31. The Court in *Kisor* was faced with a challenge to *Auer* deference to an agency interpretation of its rules. *Id.* at 2408. The Court refused to overrule its precedent, but restated and stressed the limits of the deference accorded agency determinations. The Court affirmed that *Auer* deference applies only when the text is "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Kisor*, 139 S. Ct. at 2414. Thus, a court must first determine whether the regulation itself is ambiguous; if not, the plain language of the regulation controls. "There can be no thought of deference unless, after performing that thoroughgoing review, the regulation remains genuinely susceptible to multiple reasonable meanings and the agency's interpretation lines up with one of them." *Kisor*, 139 S. Ct. at 2419.

32

Whitney argues that *Kisor* applies to Guidelines' commentary as well as agency regulations, and instructs that the commentary is only entitled to deference if the guideline it interprets is genuinely ambiguous. OB at 31. Whitney contends that the language of Section 2K2.1(b)(6)(B) that a firearm must be possessed "in connection with" another felony offense is not ambiguous, and the commentary to this guideline is not entitled to deference. OB at 33.

Whitney's argument fails on several grounds. First, even assuming that the Guidelines' commentary is not authoritative unless there is a genuine ambiguity in the Guidelines, his cursory contention that the meaning of the guideline's "in connection with" is plain and unambiguous does not withstand scrutiny. As the Sentencing Commission explained, Application Note 14 was intended to address "a growing conflict among the circuits regarding the interpretation of Section 2K2.1(b)(6)(B)," particularly with respect to the possession of a firearm "in connection with" burglary and drug offenses. The Commission stressed that the application note was intended to ensure that the enhancement would apply only if the firearm facilitated, or had the potential to facilitate, another felony offense. As the Third Circuit observed in discussing the purpose of the application note, the Commission "sought to address the concern expressed by the Supreme Court in *Smith* . . . that a defendant might

33

be punished for committing a drug trafficking offense while in possession of a firearm, even when the presence of the firearm is purely coincidental or unrelated." *United States v. West*, 643 F.3d 102, 113 (3d Cir. 2011), citing *Smith*, 508 U.S. at 238; *see also, e.g., United States v. Young*, 115 F.3d 834, 838 (11th Cir. 1997) (rejecting the Fifth Circuit's interpretation of the phrase). Indeed, several courts have observed that the phrase "in connection with" is "notable for its vagueness and pliability" and covers a wide range of relationships. *United States v. Loney*, 219 F.3d 281, 283 (3d Cir. 2000); *see also, e.g., United States v. Thompson*, 32 F.3d 1, 7 (1st Cir. 1994) ("[T]he phrase 'in connection with' should be interpreted broadly....").

This lack of consensus among the courts as to the meaning of the guideline language alone demonstrates that the "in connection with" language of the guideline is at worst "susceptible to multiple reasonable meanings," and is thus "ambiguous" within the meaning of *Kisor*. *See Kisor*, 139 S. Ct. at 2419. In *Perez,* the Third Circuit looked to the history of the guideline provision outlined above, and the disagreement among courts in its application, in concluding that the text of the guidelines provision is genuinely ambiguous. *Perez*, 5 F.4th at 396.

Whitney further argues that even if there is some genuine ambiguity in the guideline language, when applied in this case, the commentary conflicts

with the "in connection with" language of the guideline, and the guideline is

controlling. OB at 34. That argument fails, too. Application Note 14(B) is

consistent with the "in connection with" language of the guideline, as it

recognizes that a gun located in close proximity to drugs always has the

potential to facilitate a drug trafficking offense. Courts have consistently held

that a firearm that has the potential to facilitate an offense is possessed "in

connection with" that offense for purposes of Section 2K2.1(b)(6)(B), and

Whitney does not argue otherwise.[8] *See West*, 643 F.3d at 114-15. His

argument simply ignores the fact that his gun possession had the potential to

facilitate the drug trafficking offense, and that this  alone warrants application

of the enhancement. For example, Whitney could have used the guns to

protect his stash if someone attempted to steal the drugs during the period that

he possessed the guns in proximity to the drugs. The application of the

commentary in this case satisfies the "in connection with" requirement

of Section 2K2.1(b)(6)(B).

---

[8]      In an unpublished decision, the Eleventh Circuit also rejected the
argument that Application Note 14(B) was inconsistent with the guideline
because it included the potential to facilitate, and "in connection with" meant
that the firearm had to have actually facilitated another felony
offense. *See Saez*, 796 F. App'x 616. The court noted that it had always
interpreted this language broadly, and concluded that the commentary was
consistent with the guideline. Whitney does not cite, and the government has
not found, any other case involving a *Kisor* challenge to Application Note
14(B) on the grounds alleged here.

The sole authority Whitney cites as authority for the proposition that the commentary to Section 2K2.1(b)(6)(B) does not reasonably construe an ambiguity in the guideline is a solo concurrence in *Perez*. OB at 33 *citing Perez*, 5 F.4th at 404 (Bibas, J., concurring). The concurring judge's conclusion that the guideline is unambiguous (*id.*) is difficult to square with the history of conflict among the circuits interpreting the same guideline, which the Sentencing Commission identified as necessitating the commentary. The government is not aware of any court that has adopted Judge Bibas's concurrence, and Whitney cites none.

In sum, the district court did not commit any error in imposing the four-level enhancement under Section 2K2.1(b)(6)(B). Whitney's sentence should be affirmed.

## B. The District Court Correctly Determined Whitney's Criminal History Category.

### 1. Legal Standards

This Court reviews *de novo* the district court's interpretation of the Sentencing Guidelines, including the calculation of the criminal history score. *United States v. Madrid-Becerra*, 14 F.4th 1096, 1099 (9th Cir. 2021) (cleaned up). If a defendant fails to object to a guidelines calculation, the Court reviews the

imposition of an allegedly erroneous sentence for plain error. *United States v. Halamek*, 5 F.4th 1081, 1087 (9th Cir. 2021).

### 2. The District Court Properly Included Whitney's Cocaine Possession Conviction in its Criminal History Calculation.

Whitney argues that the district court erred in counting a prior conviction for cocaine possession towards his criminal history score, because at the time of sentencing he had successfully filed an unopposed motion to have the conviction amended to a loitering offense that does not result in the accrual of criminal history points. OB at 36. Despite the amended judgment, the district court added two criminal history points to Whitney's criminal history score on account of the cocaine possession offense, because the judgment was not amended due to errors of law or evidence suggesting that Whitney had not committed the offense. 1-ER-19–21. It was correct to do so. While Whitney's cocaine possession conviction was set aside in favor of an amended loitering offense, it was not "expunged" within the meaning of the guidelines, and was therefore properly counted. U.S.S.G. § 4A1.2(j) excludes "expunged" convictions from inclusion in criminal history category calculations. However, Application Note 10 to that section notes that convictions that are "set aside" or for which the defendant has been pardoned merely "for reasons unrelated to innocence or errors of law" nonetheless count towards a defendant's criminal history score. Whitney does not contest that his

37

conviction was amended for reasons other than legal error or actual innocence. The district court therefore correctly applied the guideline commentary.

Whitney nonetheless disputes the validity and applicability of the commentary's guidance. OB at 36-45. He is wrong on both counts. First, the guideline commentary here provides a valid construction of the term "expunged," which is susceptible to multiple meanings. As this Court noted in *Alba-Flores*, "[t]o 'expunge' is 'to erase or [to] destroy,' and an 'expungement of record' is '[t]he removal of a conviction (esp. for a first offense) from a person's criminal record.'" *Alba-Flores*, 577 F.3d at 1108 (alterations in original). Strictly speaking, Whitney's conviction was not erased or destroyed. Rather, it was amended or altered. A reasonable construction of the term "expunged" would exclude amended convictions altogether from its definition of "expunged," and therefore amended convictions count towards criminal history scores, regardless of the reason for the amendment. Yet the guidelines commentary acknowledges that jurisdictions have a wide variety of procedures through which a defendant's criminal history may be reduced or altered, and reasonably includes in its definition of "expunged" those convictions that are altered or set aside due to errors of law or factual innocence.

Whitney also argues that the guideline commentary does not apply here because Application Note 10, which states that convictions that are "set aside"

38

or for which the defendant is "pardoned" are included in the calculation absent

factual innocence or legal error, does not explicitly reference convictions that

are "amended." OB at 44. But the text of the commentary itself makes clear

that it is intended to apply to a wide range of procedures across jurisdictions.

The commentary begins with the preamble: "[a] number of jurisdictions have

various procedures pursuant to which previous convictions may be set aside or

the defendant may be pardoned for reasons unrelated to innocence or errors of

law…." U.S.S.G. § 4A1.2, Application Note 10. Given the multitude of

"various procedures" referenced by the commentary, it is clear that this

commentary is meant to address a wide range of procedural mechanisms for

reducing a defendant's criminal history. Whitney's amended conviction, in

which his cocaine possession conviction was set aside in favor of a loitering

conviction, fits comfortably within the procedures described by the

commentary.

Whitney's claim that his cocaine possession conviction should be

excluded would fail even if the Court were to interpret the guidelines without

applying Application Note 10. The guidelines instruct district courts to include

"any sentence previously imposed upon an adjudication of guilt" in its

criminal history calculation, and provides limited, specific exceptions to that

general rule. U.S.S.G. § 4A1.2. If an amended sentence cannot reasonably fit

within the definition of a sentence which is "set aside" under application note 10, it certainly cannot fit within the definition of a sentence "expunged." *Alba-Flores*, 577 F.3d at 1108 ("to expunge" means to erase or destroy). As Whitney received a prior sentence of 60 days for his cocaine possession offense following a guilty plea, and that judgment has merely been altered rather than erased, his sentence here would count towards his criminal history even absent application of the guideline commentary.

The district court's decision here is further bolstered by the concerns this Court expressed in *Alba-Flores* and *Yepez* about defendants using state court procedures to game the federal sentencing system. *United States v. Yepez*, 704 F.3d 1087, 1091 (9th Cir. 2012) (*en banc*) ("State courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts."); *Alba-Flores*, 577 F.3d at 1111 (noting concern about gaming the federal sentencing system through the use of state court procedures). The purpose of the federal sentencing guidelines is to promote just and uniform sentences, based in part on an accurate understanding of the defendant's criminal history. Application Note 10 promotes that goal fairly by continuing to count a defendant's sentence unless there is a valid legal or factual basis to doubt its validity. The Court should

continue to apply the guidelines commentary on this issue, and it should affirm the district court's application of that commentary here.

**3.    The District Court Did Not Err, Let Alone Plainly, In Including Whitney's Misdemeanor Conviction for Failure to Register His Address as a Felon.**

Whitney also contends that the district court erred in including his conviction for failure to register his address as a felon, driving without a license, and driving without proof of insurance, for which he served a four-day jail sentence. OB at 46-50. Because Whitney failed to object below, the Court reviews for plain error.[9] There is none here.

Whitney argues that these convictions should not be counted because they are similar to the offenses listed as examples of nonqualifying offenses in U.S.S.G. § 4A1.2(c)(1), which include driving without a license, and which are not counted towards a defendant's criminal history score unless they incur a sentence more than a year's probation or 30 days' imprisonment. Yet with respect to Whitney's failure to update his address as a felon, that is a matter of strained interpretation at best. The State of Nevada's requirement plays an important role in the administration of public safety. While Whitney characterizes this conviction as an administrative offense, it is actually a misdemeanor as noted at paragraph 32 of the PSR. And Whitney cites no

---

[9]     *See* explanation of plain error standard at pp. 18-19, *supra*.

decision of any court for the proposition that this offense is "similar to" providing false information to police officer, an offense that notably omits the crucial distinguishing requirement of a defendant's felony criminal history.

Even if Whitney's argument for excepting this conviction is colorable, he cannot establish plain error, as he must in order to prevail here. Whitney briefly advocates for *de novo* review, but his own citation concedes that the continuing validity of the doctrine allowing *de novo* review for pure questions of law is in doubt, and for the reasons stated above the Court should not apply it here. And given the lack of any authority on the point and the varying interpretations to which the phrase "similar to" is susceptible, any error is hardly plain.

Moreover, given the lack of reliance by the district court on Whitney's criminal history category in imposing his sentence (*see* 1-ER-58), Whitney cannot establish that his substantial rights were affected by the alleged error. Indeed, the district court's sentence of 54 months varied below any applicable guideline range at Whitney's offense level of 25, and therefore Whitney cannot demonstrate that a one-point alteration of his criminal history score would be reasonably likely to alter the sentence the district court imposed. The Court should affirm.

**C.    The District Court Adequately Explained the Sentence It Imposed.**

**1.    Legal Standards**

Where, as here, a defendant failed to object on the ground that the district court erred procedurally in explaining and applying the § 3553(a) factors, this Court reviews for plain error.[10] *United States v. Valencia-Barrigan*, 608 F.3d 1103, 1108 (9th Cir. 2010).

In pronouncing sentence, the district court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007) (citing *United States v. Taylor*, 487 U.S. 326, 336–37 (1988)). The court is required to state the reasons for its sentence, *see* 18 U.S.C. § 3553(c), but "[t]he appropriateness of brevity or length, conciseness or detail, when to write, [and] what to say, depends upon the circumstances." *Id.*; *see also United States v. Mix*, 457 F.3d 906, 912–13 (9th Cir. 2006) (noting that "[a] district court is not required to refer to each factor listed in § 3553(a)" and that "a checklist recitation of the section 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable" (internal citations omitted)); *United States v. Contreras-Hernandez*, 628 F.3d 1169, 1174 (9th Cir. 2011) (finding no procedural error when the record

---

[10]    *See* explanation of plain error standard at pp. 18-19, *supra*.

demonstrated that the district court "considered the parties' arguments and had a reasoned basis for exercising his own legal decisionmaking authority" (alterations omitted)); *United States v. Carter*, 560 F.3d 1107, 1117–18 (9th Cir. 2009) (rejecting the defendant's argument that the sentencing court did not adequately address his "complex" arguments and noting that the district court had no obligation to engage the defendant in questions or further discussion "because it is clear from the context that the defense's arguments were heard").

## 2. The District Court Adequately Explained Its Sentence.

Whitney argues that the district court should have specifically addressed his argument for a variance based on his time in federal custody purportedly interfering with his state parole. OB at 51-56. But by his own admission, the district court is only required to address specific, nonfrivolous arguments. OB at 51, *citing United States v. Rangel*, 697 F.3d 795, 805 (9th Cir. 2012). Whitney offered no proof that his parole was actually delayed by his federal case, and his attorney expressed uncertainty as to the interaction between Whitney's state and federal sentences at sentencing. 1-ER-31. Moreover, in light of the district court's significant variance from the guidelines and the district court's awareness of Whitney's custodial history with respect to this case and the related state proceedings, Whitney cannot establish that his substantial rights were affected.

44

The district court was not required to address an argument based on speculation. As the proponent of a requested variance, Whitney bore the burden of proving the underlying facts he asserts here. *Cf. United States v. Howard,* 894 F.2d 1085, 1089-90 (9th Cir. 1990) (party seeking a guidelines adjustment bears the burden of proving underlying facts). Despite a full and fair opportunity to do so, Whitney offered no evidence of any kind to support his assertion that he was granted parole earlier than August 2022, but that the processing of his parole was somehow delayed. Indeed, the only information contained in the record states that Whitney was paroled on August 23, 2022, and that information was provided by Whitney. PSR at p.2, p.28 (noting explanation of parole requested by defense). Even when making this argument to the court, Whitney's counsel expressed uncertainty as to how Whitney's state parole process had unfolded. 1-ER-31 ("And so, in essence, we're not sure whether or not they let his parole –let his sentence expire or at some point granted him his mandatory parole. And so, as of today, I'm not sure whether or not he is in primary state custody or primary federal custody."). This lack of evidence and resulting speculation repeats itself in Whitney's opening brief, where the record citations with respect to this issue are either absent (OB at 11-12), or cite solely to representations in his sentencing memorandum (OB at 53). Before this Court, Whitney asserts that he was granted state parole on July

45

5, 2021, "[o]n information and belief." OB at 54 n.7. Given Whitney's inability to make a clear statement regarding the purported effect of his federal case on his state parole proceedings, and his inability to support any of his statements with evidence of any kind, the district court did not err in declining to explicitly address this argument.

Moreover, the existing record calls into doubt Whitney's assertion that he was given a grant of parole that went unprocessed for over a year. While the PSR does note that the State of Nevada did not consider Whitney's sentence discharged following his parole in August 2022 "because he was returned to federal custody before he could complete the state parole process," which bears some resemblance to Whitney's argument for a variance, the date of Whitney's parole contained in the record is markedly different than the one Whitney's counsel represented to the court. 1-ER-31 (asserting parole had been granted on March 31, 2021). And Whitney provides no explanation as to why it was impossible for the state to process his parole in March 2021, but was nonetheless able to do so in August 2022.

Finally, Whitney cannot show that his substantial rights were affected simply because the district court did not explicitly address this argument. The district court was clearly aware from the history of the case that Whitney had been in custody since the search of his apartment in September 2020, and was

able to craft a sentence that took the time Whitney spent in state custody into account. *See* 1-ER-27 (district court discussing with counsel Whitney's time served on associated state cases); 1-ER-131 (discussing the expiration of Whitney's state sentence). When pronouncing its sentence, the district court noted that it was varying downward significantly, and ran Whitney's federal sentence concurrently with any remaining time in on his state sentence. 1-ER-59. Given that the district court clearly considered the time that Whitney had served on his related state offenses when crafting the sentence for his federal case, Whitney cannot establish that an explanation from the district court regarding his uncertain claims regarding his parole date would have affected his sentence, and therefore his claim of plain error fails. The Court should affirm.

**D.      The District Court Properly Imposed a Gang Affiliation Prohibition As Part of Whitney's Conditions of Supervised Release, But the Court Should Order a Limited Remand for the District Court to Amend the Mental Health Condition.**

### 1.      Standard of Review

The district court also imposed two special conditions of supervision, to which Whitney objects for the first time on appeal. Where a defendant fails to object to a condition of supervised release at sentencing, this Court reviews for

plain error.[11] The Court should decline to exercise its discretion to amend the sentence with respect to the gang affiliation condition, but should order a limited remand so that the district court may conform the mental health treatment condition to this Court's intervening precedent in *United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022).

### 2. The Court Should Uphold the Gang Affiliation Prohibition Because the Condition Is Valid and Therefore No Error is "Plain."

Whitney objects to a condition prohibiting him from "communicat[ing], or otherwise interact[ing], with any known member of any criminal street gang, without first obtaining the permission of the probation officer," asserting that the condition is vague. OB at 59. Yet under the plain error standard, Whitney must demonstrate that the error he failed to object to below is "plain." *United States v. Olano*, 507, U.S. 725, 734 (1993). Given this Court's repeated upholding of similar conditions, subject to limiting constructions, Whitney cannot so demonstrate. The Court should affirm the condition.

As the Supreme Court has explained, "'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'" *Id*. As this Court has observed "an error cannot be plain where there is no controlling authority on point and where the

---

[11]     *See* explanation of plain error standard at pp. 18-19, *supra*.

most closely analogous precedent leads to conflicting results." *See, e.g., United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) (quoting *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011)). Whitney cites no cases where a similar condition has been struck down as impermissibly vague. Instead, he cites cases from this Court *upholding* similar provisions prohibiting any "association" or "connection" with members of criminal gangs. OB at 60; *United States v. Soltero*, 510 F.3d 858, 886-87 (9th Cir. 2007) (upholding affiliation condition prohibiting any "association" with known gang members by reading it to exclude incidental contacts); *United States v. Vega*, 545 F.3d 743, 750 (9th Cir. 2008) (same); *United States v. Evans*, 883 F.3d 1154, 1161 (9th Cir. 2018) (upholding condition requiring that defendant have "no connection whatsoever with" criminal gangs on same basis). Thus, Whitney's own briefing establishes that the most closely analogous cases conflict with his argument.

All these cases confirm that conditions of supervised release prohibiting gang association are valid, as they are subject to an implicit limitation that unknowing or incidental contact cannot form the basis for a violation, which Whitney concedes. OB at 49. Whitney provides no basis to distinguish the prohibition on "interacting" with gang members to which he objects, and prohibitions on "associating" or having a "connection" with gang members

that have previously been upheld by this Court. Nor does Whitney's concern regarding the term "known member" of a gang have any merit, as this Court directly addressed construction of that term in *Soltero* and upheld it. *Soltero*, 510 F.3d at 867 n.9. Given the lack of a meaningful distinction between the conditions upheld in the cases cited above and the condition complained of here, Whitney cannot establish any error. Moreover, given that Whitney did not contest his gang affiliation below when the PSR alleged it (PSR ¶ 56), the rationale supporting the non-association condition here is a strong one. The Court should affirm the condition.

### 3. The Court Should Order a Limited Remand So the District Court May Amend the Mental Health Treatment Condition.

The government acknowledges that the special condition of Whitney's supervised release that requires Whitney's participation in a mental health treatment program contains the same language that this Court held to be an improper delegation of authority to the probation officer in *United States v. Nishida,* 53 F.4th 1144 (9th Cir. 2022). Because the district court did not have the benefit of this Court's decision in *Nishida* when crafting the special condition, this Court should order a limited remand to allow the district court to fashion a mental health treatment condition that comports with *Nishida*. *Id.*

at 1155 (remanding to allow the district court to revise condition and clarify the scope of authority delegated to the probation officer).

## E. Whitney's Conviction Does Not Violate the Second Amendment.

### 1. Standard of Review

Notwithstanding his guilty plea, Whitney is entitled to raise a constitutional challenge to the statute of conviction. *Class v. United States* 138 S. Ct. 798 (2018). But as Whitney concedes, because he did not raise a constitutional challenge below, his claim is subject to plain error review only.[12] OB at 27; *See* Fed. R. Crim. P. 52(b); *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012) ("[C]onstitutional issues not originally raised at trial are reviewed for plain error.").

### 2. Whitney's Claim is Foreclosed by Binding Circuit Precedent.

Given that he does not include the details of his own case in discussing his Second Amendment claim, Whitney makes a facial challenge to 18 U.S.C. § 922(g)(1). *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). This is the "most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Whitney fails to do so.

---

[12]    *See* explanation of plain error standard at pp. 18-19, *supra*.

There is no question that the Second Amendment protects "an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2145 (2022). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). On the contrary, it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose". *Id*. And recognizing a constitutional right to keep and bear arms "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons". *Id*. If this part of the *Heller* holding was not "clear", the Supreme Court went out of its way to "repeat those assurances" two years later. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (plurality opinion of Alito, J.).

And so, this Court has held that even after *Heller*, the federal prohibition on felons carrying weapons "does not violate the Second Amendment". *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010). Other courts of appeal arrived at the same result. *See, e.g.*, *United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010); *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009); *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010). And the government is not aware of any contrary authority.

52

*Vongxay* has not been expressly overruled by the Supreme Court or by this Court sitting en banc. Thus, its holding that § 922(g)(1) does not violate the Second Amendment is binding on other Ninth Circuit panels unless it has been "'effectively overruled'" because it is "'clearly irreconcilable' with 'intervening Supreme Court authority.'" *Apache Stronghold v. United States*, 38 F.4th 742, 763 (9th Cir. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).

Whitney mentions *Vongxay* only in passing in his opening brief, and the only conceivable source of an implicit overruling is *Bruen*. But the "'clearly irreconcilable' requirement 'is a high standard.'" *Fed. Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (quoting *Rodriguez v. AT & T Mobility Servs.*, 728 F.3d 975, 979 (9th Cir. 2013)). Nothing in *Bruen* meets it.

*Bruen* held that when evaluating a Second Amendment challenge, a court should consider whether "the Second Amendment's plain text covers an individual's conduct". *Id.* at 2126. If so, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* This analytical framework is "[i]n keeping with *Heller*". *Id.*

Indeed, *Bruen* does not undermine the *Heller* and *McDonald* doctrine that the right to bear arms belongs to law-abiding citizens rather than dangerous

criminals. If anything, it reinforces that point:

> [T]he Second and Fourteenth Amendments protect the right of an ordinary, *law-abiding* citizen to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that ordinary, *law-abiding* citizens have a similar right to carry handguns publicly for their self- defense. *Bruen*, 142 S. Ct. at 2122.

> The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of *law-abiding, responsible* citizens to use arms" for self-defense. *Id*. at 2131 (quoting *Heller*, 554 U.S. at 635).

> It is undisputed that petitioners Koch and Nash—two ordinary, *law-abiding*, adult citizens—are part of "the people" whom the Second Amendment protects. *Id*. at 2134.

> None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent *law-abiding* citizens with ordinary self-defense needs from carrying arms in public for that purpose. *Id*. at 2150.

(Emphases added). The Court also noted that a state could legitimately "require applicants to undergo a background check" to "ensure … that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id*. at n.9 (quoting *Heller*, 554 U.S. at 635). This acknowledgement is impossible to reconcile with Whitney's claim that the state and federal governments were precluded from disarming him based on his felony conviction. And two members of the *Bruen* majority expressly reaffirmed the recognition in *Heller* and *McDonald* that "longstanding prohibitions on the possession of firearms by felons" did not violate the Second Amendment.

*Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).

Notably, the animating concern in *Bruen* was the fact that certain "Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny.'" *Id.* at 2125. This latter step, the court concluded, "is one step too many[, because] *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2127.

*Vongxay* did not rely on this inappropriate second step. Rather, this Court relied on the conclusion that, at ratification, "the right to bear arms was 'inextricably ... tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" 594 F.3d at 1118 (citing Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986)). Indeed, this Court noted that a ban on felons possessing firearms "is also *consistent* with the explicit purpose of the Second Amendment to maintain 'the security of a free State.'" *Id.* at 1117 (emphasis added). Because nothing in *Vongxay*'s conclusion is even in tension with *Bruen*—much less irreconcilably so—the holding retains its binding force here.

### 3. This Court's Precedent Holding That the Federal Prohibition on Felons Carrying Weapons Comports with the Second Amendment Is Correct.

Whitney's arguments would be unavailing even if this were an open question: the historical record supports the conclusion that felons are not entitled to Second Amendment protection. For centuries, the gun rights of certain groups have been categorically limited to promote public safety. One nineteenth-century treatise, described as "massively popular" in *Heller*, 554 U.S. at 616, explained that some classes were "almost universally excluded" from exercising certain civic rights, including "the idiot, the lunatic, *and the felon*, on obvious grounds." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868) (emphasis added). The Second Amendment incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and "'does not preclude laws disarming the unvirtuous (i.e. criminals).'" *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs., at 146 (1986)); *see also United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir. 2009) ("'Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as a civic right … limited to those members of the polity

who were deemed capable of exercising it in a virtuous manner.'" (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002))); *United States v. Carpio-Leon*, 701 F.3d 974, 979–80 (4th Cir. 2012) ("Felons 'were excluded from the right to arms' because they were deemed unvirtuous.") (quoting Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461 at 480 (1995))).

Historical records support this conclusion. The Supreme Court has "identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (quoting *Heller*, 554 U.S. at 604). That report recognized the permissibility of imposing a firearms disability on convicted criminals and did not distinguish types of criminals, stating that "citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Id.* (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662 and 665 (1971)). Samuel Adams offered a similar amendment at the Massachusetts convention to ratify the Constitution, recommending "that the said Constitution be never construed to authorize Congress … to prevent the people of the United States, *who are peaceable citizens*, from keeping their

own arms." Schwartz, *The Bill of Rights* at 674–75, 681 (emphasis added). In the same vein, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Skoien*, 614 F.3d at 640.

In this regard, the right to bear arms is analogous to other civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); the right to serve on a jury, 28 U.S.C. § 1865(b)(5); and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8–9 (1998). Just as Congress and the states have required convicted felons to forfeit these civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony conviction." *Tyler v. Hillsdale Cty. Sherriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring in judgment).

Whitney's suggestion that § 922(g)(1)'s relative recency renders it invalid is inconsistent with the test set out in *Bruen*. The appropriate "analogical reasoning under the Second Amendment is [not] a regulatory straightjacket … analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Bruen*, 142 S. Ct. at 2133. After all, there are sound and sensible "modern regulations that were unimaginable at the founding." *Id.* at 2132. For instance, in the early

58

days of the Republic most serious offenses carried a mandatory death sentence. *See, e.g.*, Crimes Act of 1790 §§ 3 and 8–10, 1 Stat. 113–114. In light of the numerous clear statements that the right to bear arms belongs only to the law-abiding, the absence of an exact counterpart to § 922(g)(1) is better understood as the product of a criminal justice system that assumed those convicted of the most serious crimes would rarely be in a position to possess firearms at all.

And although the precise structure of § 922(g)(1) may be relatively new, the idea of disarming criminals and lawbreakers is not. Laws disarming those who have previously engaged in bad conduct have a long pedigree. There were Revolutionary-era laws disarming those who defamed acts of Congress, failed to swear allegiance to the state, or refused to defend the United States. *Folajtar v. Att'y Gen.*, 980 F.3d 897, 908 and n.11 (3d Cir. 2020) (reviewing laws from Connecticut, Pennsylvania, and Massachusetts). Consistent with this understanding, "at their ratification conventions, several states proposed amendments limiting the right to bear arms to both law-abiding and 'peaceable' citizens." *Id*. at 908 (reviewing proposed amendments from Pennsylvania, New Hampshire, and Massachusetts).

Because the "'governmental practice has been open, widespread, and unchallenged since the early days of the Republic, the practice should guide our interpretation of an ambiguous constitutional provision.'" *Bruen*, 142 S. Ct.

at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in judgment)). Congress's choice to disarm those who have chosen to commit serious crimes is a valid legislative judgment that does not violate anyone's constitutional rights.

### 4. The District Court Made No Clear or Obvious Error in Accepting Whitney's Guilty Plea and Entering Judgment.

Whitney cannot prevail at any standard of review, and he certainly cannot establish plain error. At the time Whitney pleaded guilty and was sentenced, there was binding precedent in this circuit upholding the constitutionality of § 922(g)(1). And when Whitney filed his opening brief, not a single federal court had concluded otherwise. Since then, the Fifth and Eighth Circuits have expressly rejected post-*Bruen* challenges to § 922(g)(1). *See United States v. Roy*, 2023 WL 3073266 (5th Cir. Apr. 25, 2023) (unreported); *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023). The only circuit decision calling into question the constitutionality of § 922(g)(1) is *Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023), where a divided en banc court upheld an as-applied challenge from a nonviolent felon.

This Court has previously reached the "commonsense conclusion" that it "'do[es] not see how an error can be plain error when the Supreme Court and this court have not spoken on the subject, and the authority in other circuits is split.'" *United States v. Thompson*, 82 F.3d 849, 855 (9th Cir. 1996)

(quoting *United States v. Alli-Balougun*, 72 F.3d 9, 12 (2d Cir. 1995)). Here, multiple Supreme Court justices have expressly opined that bans on felons possessing firearms are constitutional, as have multiple Courts of Appeals. The sole contrary authority is a divided decision that relies on a number of factors not applicable to Whitney.

Accordingly, Whitney cannot establish plain error, and the Court should affirm.

## VI.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court affirm Whitney's prison sentence and conviction and remand for the limited purpose of fashioning a substance abuse treatment condition of supervised release that comports with *Nishida*.

Dated this 11th day of October 2023.

Respectfully submitted,

JASON M. FRIERSON
United States Attorney

ROBERT L. ELLMAN
Appellate Chief

*s/ Peter H. Walkingshaw*
PETER H. WALKINGSHAW
Assistant United States Attorney
400 South Virginia, Suite 900
Reno, NV 89501
(775) 784-5438
*Attorneys for the United States*

# VII.

## STATEMENT OF RELATED CASES

The government is unaware of any related cases currently pending before this Court.

Dated this 11th day of October 2023.

_s/ Peter H. Walkingshaw_
PETER H. WALKINGSHAW
Assistant United States Attorney

**CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. P. 32(a)(5), (6) AND CIRCUIT RULE 32-1**

I hereby certify that:

Pursuant to Fed. R. App. P. 32(a)(5) and (6) and Ninth Circuit Rule 32-1, the attached **GOVERNMENT'S ANSWERING BRIEF** is proportionately spaced, has a typeface of 14 points, and contains 13,855 words, excluding the portions exempted by Fed. R. App. P. 32(f).

Dated this 11th day of October 2023.

*s/ Peter H. Walkingshaw*
PETER H. WALKINGSHAW
Assistant United States Attorney