Case No. 22-10326

# United States Court of Appeals
# for the Ninth Circuit

United States of America,

  Plaintiff/Appellee,

v.

Stephon James Whitney,

  Defendant/Appellant.

D.C. No. 2:21-cr-00002-JAD-NJK

Appeal from the United States District Court
for the District of Nevada

## Appellant Stephon Whitney's
## Reply Brief

Rene L. Valladares
Federal Public Defender
*Amy B. Cleary
Assistant Federal Public Defender
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
Amy_Cleary@fd.org

*Counsel for Appellant Stephon Whitney

# Table of Contents

Reply..................................................................................... 1

I.    The parties agree remand is required to correct the special mental health condition under *Nishida.* .................................... 1

II.   The parties agree remand is required to correct the district court's imposition of discretionary supervision conditions under *Montoya.* ......................................................................... 1

III.  The government applies the wrong standard of review to the erroneous four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), tainting its entire argument............................. 2

   A.   Mr. Whitney repeatedly objected to application of § 2K2.1(b)(6)(B). ...................................................... 2

   B.   The district court's findings do not support the enhancement. ................................................................... 4

   C.   The gun possession wasn't in connection with drug distribution. ............................................................. 11

IV.  The district court incorrectly determined Mr. Whitney's criminal history category. ......................................... 11

   A.   The district court improperly counted a non-existent conviction in its criminal history calculation........................ 11

   B.   The district court plainly erred in counting a non-qualifying minor conviction. .................................................. 14

V.   The district court failed to consider a variance based on ineligibility for credit for time served...................................... 20

VI.  The gang affiliation prohibition is vague. ................................ 22

VII. 18 U.S.C. § 922(g)(1) is unconstitutional. ................................ 22

i

Conclusion ............................................................................. 27

Certificte of Complaince

Certificate of Service

# Table of Authorities

## Federal Cases

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) .......................... 26

*Denton v. Hernandez*, 504 U.S. 25 (1992) ....................................... 21

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................... 24

*Gall v. United States*, 552 U.S. 38 (2007) ....................................... 17

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019) ...................................... 3, 11

*Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) ............. 4

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) .................. 24

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ................ 18

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S. Ct. 2111 (2022) ................................................... 22, 23, 26

*Range v. Att'y Gen. U.S.,* 69 F.4th 96 (3d Cir. 2023) ..................... 23

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) .............. 17

*United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009) ......... 12

*United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) ............ 5, 6

*United States v. Carrasco*, 257 F.3d 1045 (9th Cir. 2001) ........... 7, 8

*United States v. Flores*, 725 F.3d 1028 (9th Cir. 2013) .................... 5

*United States v. Franklin*, 18 F.4th 1105 (9th Cir. 2021*),
   cert. denied*, 143 S. Ct. 219 (2022) ............................................. 6

*United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007) ............ 7, 8

*United States v. Grimaldo*, 993 F.3d 1077 (9th Cir. 2021) .............. 5

*United States v. Hammons*, 558 F.3d 1100 (9th Cir. 2009) ........... 20

*United States v. Hector*, 846 F. App'x 487 (9th Cir. 2021) ............... 7

*United States v. Jimenez-Shilon*, 34 F.4th 1042 (11th Cir. 2022) .. 25

*United States v. Joseph*, 716 F.3d 1273 (9th Cir. 2013) ...... 16, 17, 20

*United States v. McEnry*, 659 F.3d 893 (9th Cir. 2011) .................. 14

*United States v. McNabb*, 713 F. App'x 533 (9th Cir. 2017) ............ 7

*United States v. Mejia*, 559 F.3d 1113 (9th Cir. 2009) ............. 19, 20

*United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015) .... 25

*United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023) (en banc)  1, 2

*United States v. Nishida*, 53 F.4th 1144 (9th Cir. 2022) .................. 1

*United States v. Parlor*, 2 F.4th 807 (9th Cir. 2021) ......................... 9

*United States v. Pepe*, 895 F.3d 679 (9th Cir. 2018) ................ 23, 24

*United States v. Polanco*, 93 F.3d 555 (9th Cir. 1996) ..................... 7

*United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) .............. 22

*United States v. Wang*, 944 F.3d 1081 (9th Cir. 2019) ............. 16, 17

*United States v. Yepez*, 704 F.3d 1087 (9th Cir. 2012) (en banc) .... 12

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ........................... 3-4, 4

## Federal Statutes

18 U.S.C. § 922(g)(1) ...................................................... 22, 23, 26, 27

## State Statutes

NRS 179C.110 ...................................................................... 15

## U.S. Sentencing Guidelines

U.S.S.G. § 2K2.1 ...................................................................... 11

U.S.S.G. § 2K2.1(b)(6)(B) ............................................................. 2, 17

U.S.S.G. § 4A1.1 ............................................................................ 14

U.S.S.G. § 4A1.1(d) ....................................................................... 12

U.S.S.G. § 4A1.1(e) (2023) ............................................................ 18

U.S.S.G. § 4A1.1, app. Note 12(A) ............................................... 16

U.S.S.G. § 4A1.2 ...................................................................... 11, 14

U.S.S.G. § 4A1.2(c)(1) ........................................................ 15, 16, 17

U.S.S.G. § 4A1.2(c)(2) ................................................................... 13

U.S.S.G. § 4A1.2(j) ........................................................................ 14

## Reply

### I. The parties agree remand is required to correct the special mental health condition under *Nishida*.

The parties agree the district court plainly erred by failing to

clarify whether it delegated authority to the probation officer to decide

if Mr. Whitney must participate in inpatient mental health treatment.

*See United States v. Nishida*, 53 F.4th 1144, 1150 (9th Cir. 2022); OB,

57–58; AB, 50–51; 1-ER-6 (special condition 4). The Court should thus

vacate the mental health condition and remand with instructions that

the district court clarify (as it did for drug treatment), whether

probation's discretion to require mental health treatment is limited to

out-patient treatment under *Nishida*.

### II. The parties agree remand is required to correct the district court's imposition of discretionary supervision conditions under *Montoya*.

Through a separately filed joint stipulation, the parties also agree

it is appropriate to vacate the discretionary supervision conditions

imposed and remand for resentencing under *United States v. Montoya*,

82 F.4th 640, 646 (9th Cir. 2023) (en banc). App. Dkt. 34. *Montoya*

requires the district court, on remand, to either: (1) orally pronounce of

all discretionary conditions of supervised release at sentencing; or (2) if

the defendant was advised of the proposed discretionary conditions

before sentencing, "incorporate those conditions by reference at the

hearing." 82 F.4th at 651.

## III. The government applies the wrong standard of review to the erroneous four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), tainting its entire argument.

### A. Mr. Whitney repeatedly objected to application of § 2K2.1(b)(6)(B).

Whitney repeatedly objected to the four-level enhancement under

U.S.S.G. § 2K2.1(b)(6)(B), preserving the issue for appeal. *See* 1-ER-26,

46–52, 98–120, 121–22, 123, 127–31 (argument, witness testimony, and

colloquy challenging enhancement); 2-ER-237–38, 258–398 (sentencing

memoranda and supporting exhibits objecting to enhancement). The

district court overruled Mr. Whitney's objection. 1-ER-21–22. Whitney

then objected to the ruling as vague. 1-ER-34–36 ("all due respect to the

Court's decision, I think that it's too vague" given the evidence

adduced). As such, this Court reviews the district court's construction

and interpretation of the enhancement de novo, its application of the

2

enhancement for abuse of discretion, and its factual findings for clear error. *See* OB, 13.

The government is therefore incorrect to urge review of this challenge for plain error. *See* AB, 15, 18–20, 28 (alleging Whitney failed to object), 29 (alleging "the district court had no occasion to explicitly place in the factual record all the reasons (in addition to the gun's proximity to the drugs) that it concluded that Whitney possessed the gun in connection with the drug offense"). As a result, the entirety of government's response is tainted by its erroneous application of plain error review and is unpersuasive. *See* AB, 18–36.

Besides overlooking Mr. Whitney's objections, the government confuses Mr. Whitney's appellate claim challenging the enhancement with his appellate arguments supporting that claim. AB, 19–20, 30–36 (referencing argument that *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), reduced any deference given to the guideline commentary), 26–30 (referencing argument that mere proximity is insufficient). "Once a federal claim is properly presented, a party can make *any* argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)

(emphasis added). Indeed, even if a party "expressly disavow[s]" a given argument before the district court, appellate review in the normal course is appropriate when the argument supports the consistent claim. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995).

Mr. Whitney objected to the four-level enhancement throughout the district court proceedings as being inapplicable legally and factually. *See infra*, pp. 2–3. Each of his appellate arguments challenging that enhancement are consistent with those claims, including his arguments regarding *Kisor* and proximity. OB, 13–35; *see also Yee*, 503 U.S. at 543. Plain error review does not apply to any of his arguments challenging the propriety of the enhancement. *See* OB, 13 (identifying correct standards of review).

## B. The district court's findings do not support the enhancement.

The government makes two arguments to support the enhancement. It asserts the district court chose between two permissible views of the evidence and that choice was not clearly erroneous. AB, 25. And it asserts Jessica Rodosh's repeated confessions that she possessed the marijuana for personal use and obtained the gun

for safety during the pandemic are facially incredible. AB, 22–23. But viewing these arguments in the context of the applicable evidentiary burdens and the required factual findings to support the enhancement, these arguments fail.

Because Mr. Whitney objected to the enhancement, the "district court [was] obligated to resolve the factual dispute" over the enhancement and on which the government bore the burden of proof. *United States v. Flores*, 725 F.3d 1028, 1041 (9th Cir. 2013) (cleaned up); *see also United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005) (government bears evidentiary burden when it seeks sentence enhancements). It is only through such findings that this Court may ensure the enhancement is not based on "speculation" or "conjecture." *United States v. Grimaldo*, 993 F.3d 1077, 1082 (9th Cir. 2021) (citation omitted). Thus, even if Mr. Whitney had merely objected to the enhancement without offering rebuttal evidence, the government still bore the evidentiary burden and the district court still had to make the requisite findings. *See Flores*, 725 F.3d at 1041 (the defendant's "failure to submit such evidence is not dispositive").

Here, however, Mr. Whitney did rebut the government's evidence. He produced Ms. Rodosh's sworn testimony, written statement, and in-court admissions that she alone possessed the cannabis. 1-ER-46–52; 2-ER-241–43, 262–69, 300–306.[1] And while Mr. Whitney maintains it was unreasonable for the district court to discredit Ms. Rodosh's statements, OB, 25–30, the rest of the government's evidence failed to demonstrate that it was more than likely that it was Mr. Whitney who possessed the cannabis and possessed the gun in connection with drug trafficking.

At the outset, however, Mr. Whitney notes the government's silence on several material matters. The government does not dispute that:

---

[1] The government complains that the defense did not call Ms. Rodosh to testify at Mr. Whitney's federal sentencing. AB, 25. This complaint is not well-taken. The government bears the burden of proving the propriety of the enhancement. *Ameline*, 409 F.3d at 1086. And, though Ms. Rodosh spoke at the sentencing, the government never asked that she be placed under oath. The government thus waived its right to challenge those statements. Finally, and in any event, evidentiary rules are relaxed during sentencing. *United States v. Franklin*, 18 F.4th 1105, 1114 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 219 (2022) ("neither the Confrontation Clause nor the Federal Rules of Evidence apply to [sentencing] hearings").

1) both Mr. Whitney and Ms. Rodosh lived in the apartment where all the items were found, OB, 19, 27;

2) the gun charge stems from Mr. Whitney's constructive possession of the gun—not actual possession, OB, 15, 20;

3) no evidence establishes that either Ms. Rodosh or Mr. Whitney actually engaged in any drug sale, OB, 27–29; *cf. United States v. Hector*, 846 F. App'x 487, 489 (9th Cir. 2021) (defendant "was twice observed selling narcotics through his kitchen window"); *United States v. Polanco*, 93 F.3d 555, 567 (9th Cir. 1996) (defendant "was observed selling marijuana");

4) the cannabis was not found with or packaged in small plastic baggies for distribution, OB, 27–29; 2-ER-107–09; *United States v. Carrasco*, 257 F.3d 1045, 1048 (9th Cir. 2001) (recognizing plastic baggies as a well-known tool for the packaging and sale of drugs);

5) the cannabis was not found with the gun, OB, 8–9; *cf. United States v. McNabb*, 713 F. App'x 533, 534 (9th Cir. 2017) (firearm found in same backpack as the drugs); *United States v.*

7

*Gonzales*, 506 F.3d 940, 947 (9th Cir. 2007) (gun found in the
same gym bag as methamphetamine); and

6) the district court did not, in applying the enhancement,
reference Mr. Whitney's claims about possessing the gun and
the cannabis which were made only after police threatened to
charge Ms. Rodosh, placing her children at risk of being
removed from her care, OB 25; 1-ER-22.

Given these undisputed facts, the district court's decision could
have only rested on the items' proximity to one another and Mr.
Whitney's presence in the apartment. But "[m]ere proximity to
contraband, presence on property where it is found and association with
a person or persons having control of it are all insufficient to establish
constructive possession." *Carrasco*, 257 F.3d at 1049 (citation omitted).
Moreover, because both Ms. Rodosh and Mr. Whitney lived in the
apartment, more than a mere proximity was required to reasonably
conclude that it was *Mr. Whitney* who possessed the cannabis and also
possessed gun in connection with drug trafficking. Yet aside from mere
proximity, there was no reliable evidence demonstrating it was Mr.
Whitney who possessed the cannabis (as opposed to Ms. Rodosh), let

alone that he engaged in drug trafficking or possessed the gun in connection with the supposed trafficking.

Like the district court, the government relies on mere proximity to support the enhancement. AB, 30 (asserting "[t]his Court has found the enhancement necessarily applies where the gun in question is found near drugs from a drug offense.").[2] In support, the government cites *United States v. Parlor*, 2 F.4th 807, 815 (9th Cir. 2021), for the proposition that "the enhancement necessarily applies where the gun in question is found near drugs from a drug offense." AB, 30. But *Parlor* involved only one person with access to the home where drugs were found—the defendant. 2 F.4th at 811. There was no need for the *Parlor* Court to determine whether the defendant, as opposed to someone else, possessed a firearm and did so in connection with drug trafficking. Only the defendant was connected to both the gun and the drugs. *See id.*

_____

[2] Though the government relies here, as it did below, on proximity to support the enhancement, it also circularly suggests Mr. Whitney mistakenly assumes the district court relied solely on the proximity of the gun and the cannabis. AB, 27. But given the lack of findings necessary to support a finding that Mr. Whitney possessed the gun in connection with the cannabis as discussed herein, the court's conclusion can only have relied on proximity.

Here, however, the district court needed to make supportable factual findings tying Mr. Whitney's constructive possession of the gun to the likelihood that he (1) possessed the cannabis (as opposed to Ms. Rodosh) for purposes of drug trafficking and (2) possessed the firearm in connection with trafficking (as opposed to Ms. Rodosh). It failed to do so. *See* 1-ER-22.

Moreover, contrary to the government's suggestion, the court's disbelief of Ms. Rodosh's confessions that she possessed the cannabis for personal use did not suffice for the required findings. AB, 22–24. That the court did not accept Ms. Rodosh's confessions does not automatically establish that the government carried its burden of proving Mr. Whitney possessed the cannabis in the first instance and that he possessed gun in connection with a drug trafficking. *Cf.* AB, 22–24. The court still had to identify evidence supporting the enhancement given that both Ms. Rodosh and Mr. Whitney each lived in the apartment. The court made no such findings because the government failed to offer sufficient evidence to do so.

Thus, contrary to the government's claim, this record does not present two multiple permissible views of the evidence. AB, 25. At best,

the district court used speculation and conjecture to impermissibly draw adverse inferences against Mr. Whitney and increase his offense level. This clear error warrants reversal.

### C. The gun possession wasn't in connection with drug distribution.

Given the importance of the district court's proximity finding in applying the enhancement, Mr. Whitney relies on the arguments raised in his opening brief requesting that the Court reconsider prior precedent applying the application note 14(B) to U.S.S.G. § 2K2.1 following the Supreme Court's intervening decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). OB, 30–35.

## IV. The district court incorrectly determined Mr. Whitney's criminal history category.

### A. The district court improperly counted a non-existent conviction in its criminal history calculation.

By the time of Mr. Whitney's federal sentencing, his 2017 misdemeanor drug possession offense listed in PSR ¶ 33 had been amended to a loitering offense, which does not count for criminal history purposes under U.S.S.G. § 4A1.2. OB, 36–46. In arguing otherwise, the government (like the district court) erroneously overlooks crucial

11

differences between the historical fact of a defendant's prior *status* and a change to the prior offense of conviction. AB, 37–41. But this distinction is critical to understanding the error here.

As Mr. Whitney explained in his opening brief, neither *United States v. Yepez*, 704 F.3d 1087 (9th Cir. 2012) (en banc) (per curiam), nor *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009), control the issue here. OB, 38–41. Both cases hold a court could not retroactively change the historical fact that the defendant committed the federal offense while serving another criminal offense for purposes of § 4A1.1(d).[3] *Yepez*, 704 F.3d at 1090; *Albar-Flores,* 577 F.3d at 1109–11. This makes sense. Either the defendant was serving another sentence when committing a new offense or he was not. A defendant's historical status in a moment in time cannot be changed.

In contrast, Mr. Whitney's amended judgment actually changed the prior conviction. And the issue here is whether the conviction itself qualifies for criminal history points at the time of sentencing—not

---

[3] U.S.S.G. § 4A1.1(d) has now been moved to 4A1.1(e) under the 2023 Guidelines. Unless otherwise designated, however, the Mr. Whitney refers herein to the 2021 edition of the Sentencing Guidelines Manual.

whether Mr. Whitney had a particular criminal history status at the time of the offense. Although the government summarily cites *Yepez* and *Alba-Flores*, neither decided the question here, nor does the government claim these holdings extend beyond the historical fact of a defendant's status. AB, 40.

Instead, the government suggests that resolution of this issue should hinge on the 60-day sentence Mr. Whitney received for the prior offense and not the amended conviction for which he received it. AB, 39–40. While perhaps enjoying superficial appeal, this argument ignores that the Guidelines specifically exclude certain convictions, including Mr. Whitney's amended conviction, *no matter the sentence* received or imposed. Loitering offenses are among the offenses that "are never counted." U.S.S.G. § 4A1.2(c)(2). Thus, whatever sentence Mr. Whitney received before the prior conviction was amended is irrelevant. What matters for purposes of his criminal history calculation is the actual conviction at the time of sentencing. Because loitering does not count, remand is required.

The government is silent regarding Mr. Whitney's argument that *Kisor* forbids courts from deferring to guidelines commentary unless the

actual guideline provision is ambiguous and commentary reasonably interprets this ambiguity. OB, 45 (discussing application notes 6 and 10 to § 4A1.2). It therefore waives any argument on this front. *United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (government's failure to assert an argument that "was available at the time it filed its answering brief" constitutes waiver). The Court may thus alternatively find that the commentary unreasonably expands the straightforward text of § 4A1.2(j), which merely states expunged convictions are not counted and makes no provision for "amended" convictions. OB, 45.

### B. The district court plainly erred in counting a non-qualifying minor conviction.

The district court plainly erred when calculating Mr. Whitney's criminal history by counting a technical regulatory offense for not registering a new address and for which he received four days in jail. OB, 46–50. The government fails to correctly assess either the substance of the offense or the effect of the error: correction renders Mr. Whitney eligible for a retroactive one-point reduction in his criminal history points under amended U.S.S.G. § 4A1.1. *Compare* OB, 46–50; *with* AB, 41–42.

14

There is no dispute that at least two of the three counts from Mr. Whitney's 2018 conviction do not count for criminal history purposes. PSR ¶ 32; OB, 47 (driving without a license and driving without proof of insurance are excluded under U.S.S.G. § 4A1.2(c)(1)); AB, 41–42. (failing to argue otherwise). The only count at issue is the misdemeanor offense under NRS 179C.110, which requires a convicted person to notify local police of an address change within 48 hours of the change. PSR ¶ 32; OB, 46–50; AB, 41–42.

The government does not meaningfully dispute Mr. Whitney's argument that providing false information to police is similar to the failure to update the police with his address and should not have been included in his criminal history calculation. *Compare* OB 46–50, *with*, AB 41–42. It only suggests that the offense plays a "role in the administration of public safety." AB, 41. But the very same can be said of every other excluded offense: careless or reckless driving, contempt of court, disorderly conduct or disturbing the peace, driving without a license or with a revoked or suspended license, gambling, hindering or failure to obey a police officer, insufficient funds check, leaving the

scene of an accident, non-support, prostitution, resisting arrest, and trespassing. U.S.S.G. § 4A1.2(c)(1).

The commentary directs that, in discerning whether "an unlisted offense is similar to an offense listed," courts should employ common sense and consider:

> relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.1, app. note 12(A). Common sense dictates that the 4-day sentence Mr. Whitney received for a passive, technical notification offense is similar to the listed offenses.

The government also asserts that the inclusion of this offense is not plain error because the parties have not identified a case specifically excluding it. AB,41–42. This narrow argument cannot be squared with this Court's precedent. "An appellate case need not answer the precise question to show plain error." *United States v. Wang*, 944 F.3d 1081, 1089 (9th Cir. 2019) (citing *United States v. Joseph*, 716 F.3d 1273,

1280 (9th Cir. 2013)). Indeed, "[t]he clear text and structure of . . . the Guidelines may also suffice to show plain error." *Id.*

Here, the Guidelines specifically identify certain "prior offenses" and provides those and similar offenses, "by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." U.S.S.G. § 4A1.2(c)(1). The guideline text thus reflects that it would be a plain error to count one of the identified convictions or convictions similar to them that failed to satisfy one of these requirements. *See id.*; *Wang*, 944 F.3d at 1089.

As to the resulting prejudice, the Supreme Court holds that failing to properly calculate the Guidelines is a "significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). This is especially true where the miscalculation was a judicial error resulting from a mistake in the presentence investigation report prepared by the probation office, an entity who works on the district court's behalf. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018).

17

When the Guidelines' calculation error involves a miscalculation of criminal history points but does not change the actual criminal history category, plain error is satisfied once the defendant demonstrates "a reasonable probability of prejudice." *See Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016). The now-retroactive Guidelines amendments Mr. Whitney predicted in his opening brief establish a reasonable probability of prejudice. OB, 49. Under amended § 4A1.1(e) (2023), Mr. Whitney is eligible for a 1-point status reduction.[4] The combined effect of the amendment and the removal of the point for the failure to notify authorities of an address change lowers Mr. Whitney's criminal history score from 11 to 9, concomitantly lowering his criminal history category from IV to III.

---

[4] This prejudice is compounded if this Court agrees the district court erred in assessing two criminal history points for Mr. Whitney's loitering conviction. *See infra,* pp. 11–14. Correcting his criminal history calculation to remove the 2 points assessed for the loitering conviction and the 1 point for the failure to notify authorities of his new address drops the total score from 9 to 6. *See* PSR, ¶¶ 33, 34, 37. This renders Mr. Whitney eligible for a 2-point status reduction because he would not qualify for the status enhancement in the first instance. *See* § 4A1.1(e) (2023). This places him in criminal history category III and results in a guideline range of 70 to 87 months. *See* OB, p. 50, n.6. The government does not dispute this.

PSR ¶¶ 34, 37; https://www.ussc.gov/guidelines/2023-guidelines-manual/annotated-2023-chapter-5.[5] The government does not dispute this.

Instead, the government alleges this error can be ignored because the district court varied below the calculated guideline range. AB, 42. The government is mistaken. This Court, in *United States v. Mejia*, found that if on remand from a guideline error, the district court imposed a low-end Guidelines sentence as it had at the original sentencing, the defendant's sentence "could be reduced by 20 months." 559 F.3d 1113, 1116 (9th Cir. 2009). This possibility rendered the error one that affected the defendant's substantial rights. *Id.*

*Mejia*'s rationale applies here. The guideline range at Mr. Whitney's sentencing was calculated to be 100 to 120 months. 1-ER-24. The court varied down to 54 months. 1-ER-59. Given that the district court could again choose to vary downward with corrected criminal

---

[5] District courts may effectuate the retroactive the 2023 guideline status amendment on February 1, 2024. *See* U.S. Sent. Comm'n, *U.S. Sentencing Commission Votes to Allow Retroactive Sentence Reductions and Announces Its Next Set of Policy Priorities*, https://www.ussc.gov/about/news/press-releases/august-24-2023.

history, Mr. Whitney's substantial rights are prejudiced by the error. *See Mejia*, 559 F.3d at 1116; *see also Joseph*, 716 F.3d at 1280 ("when a plain error may have led to a sentence that was one month longer than necessary, even within the Sentencing Guidelines, that error 'affects substantial rights'") (quoting *United States v. Hammons*, 558 F.3d 1100, 1106 (9th Cir. 2009)). This error warrants relief.

## V. The district court failed to consider a variance based on ineligibility for credit for time served.

The government does not dispute that state parole commissioners determined Mr. Whitney was eligible for parole during the litigation of his federal case. OB, 52–53. Nor does the government dispute the only reason parole could not granted to Whitney was because he was in federal system, inhibiting the parole process. OB. 53–54; 1-ER-31 The government also does not dispute the district court did not consider a variance based on the parole decison. OB, 51–56; AB, 45.

Instead, the government asserts the district court did not have to consider Mr. Whitney's variance request based on the inability to execute the state parole grant because this argument was "frivolous." AB, 45. In support, the government notes Mr. Whitney's counsel

expressed uncertainty about how Mr. Whitney's state parole process
unfolded and whether he was in state or federal custody at the time of
his federal sentencing. AB, 45. The government misuses the term
frivolous.

A matter is frivolous when "the facts alleged rise to the level of the
irrational or the wholly incredible, whether or not there are judicially
noticeable facts available to contradict them." *Denton v. Hernandez*, 504
U.S. 25, 33 (1992). With no dispute that the state granted Mr. Whitney
parole during his federal litigation, his request that the district court
consider and address that fact was not frivolous, regardless of whether
uncertainty existed as to how much uncredited time resulted. *See* 1-ER-
25–31; 2-ER-226–29.

Moreover, the district court's error in failing to consider a variance
based on his parole grant affected Mr. Whitney's substantial rights,
contrary to the government's assertion. AB,46–47. Because the court
varied downward for other reasons—overstatement of criminal history,
personal history, lack of violence in charged offense, and significant
family support—it is possible the court could choose to consider the
parole grant as another basis for a variance on remand and vary

further. *See infra*, pp. 19–20. The Court should vacate the sentence with instructions that the district court consider whether a further variance based on Mr. Whitney's parole grant is appropriate.

## VI. The gang affiliation prohibition is vague.

Mr. Whitney seeks review of the special condition prohibiting Mr. Whitney from "gang affiliation" to ensure its terms are sufficiently clear. OB, 59–60. At issue are the phrases "communicate, or otherwise interact" and "known member." OB, 59–60; 1-ER-6. The parties do not dispute this Court has addressed and upheld similar phrasing in conditions prohibiting associations with gangs. OB, 59–60; AB, 48–50. But to ensure the particular phrasing of this condition is constitutional, Mr. Whitney asks the Court to address it. *See* OB, 59–60. If either phrase is constitutionally vague or overbroad, he requests the condition be vacated and remanded for correction.

## VII. 18 U.S.C. § 922(g)(1) is unconstitutional.

As Mr. Whitney acknowledged in his opening brief that, before *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), this Court found 18 U.S.C. § 922(g)(1) constitutional. OB, 63–64 (citing *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010)). But *Bruen*

fundamentally altered the analysis courts must apply when considering

the constitutionality of prohibitions placed on the Second Amendment

right to bear arms.

Now, courts "must first decide whether the text of the Second

Amendment applies to a person and his proposed conduct," and if so,

the government "must affirmatively prove that its firearms regulation

is part of the historical tradition that delimits the outer bounds of the

right to keep and bear arms." *Range v. Att'y Gen. U.S.,* , 69 F.4th 96,

101 (3d Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2127, 2134–35). It is this

that analysis the Court must employ when assessing the

constitutionality of § 922(g)(1) post-*Bruen*. OB, 61–62.

The government misrepresents *Bruen*. The government claims

*Bruen* "reinforces" that the Second Amendment protects "only" law-

abiding citizens. AB, 59. But because *Bruen* petitioners described

themselves as law-abiding "in the pleadings below," the Supreme Court

decided the case on that assumption. *Bruen*, 142 S. Ct. at 2124–25.

Second Amendment protections for non-law-abiding people were not at

issue in *Bruen*, and thus the Court had no occasion to make any such

holding. *See United States v. Pepe*, 895 F.3d 679, 688 (9th Cir. 2018)

(reiterating that "cases are not precedential for propositions not considered"). Nowhere in the *Bruen* opinion does the Court say "only" law-abiding citizens have a Second Amendment right to bear arms.

The government makes a similar misrepresentation about *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), suggesting the Supreme Court limited the right to bear arms "to 'law-abiding citizens.'" AB, 53–54.[6] But *Heller* expressly left "to future evaluation" whether other people receive Second Amendment protection. *Heller*, 554 U.S. at 635. *Heller* stated, "the people" unambiguously refers to all members of the community, "not an unspecified subset." *Id. Heller* also stated, "the people" is a "term of art" that has a uniform meaning in the First, Second, Fourth, and Ninth Amendments. *Id.* It "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id. Heller* further said the right protected by the Second Amendment "belongs to all Americans." *Id.* at 581.

––––––––––––––––

[6] The government similarly references *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010) (plurality).

Mr. Whitney is no doubt part of the "national community," just as he is part of "all Americans." Were he excluded, that would mean "the people" as used in the Second Amendment refers to "an unspecified subset" of people—a proposition *Heller* rejected. If the government is correct that breaking the law strips citizens of their Second Amendment rights, then breaking the law would also strip citizens of their First and Fourth Amendment rights. Yet a felony conviction does not result in a loss of the rights to free speech or from unlawful searches and seizures. Mr. Whitney and his conduct fall within the plain text of the Second Amendment such that his conduct is presumptively protected by the Constitution. *See, e.g.,* U*nited States v. Jimenez-Shilon,* 34 F.4th 1042, 1046 (11th Cir. 2022) (recognizing even "dangerous felons" are indisputably part of "the people"); *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) ("the Second Amendment protects unauthorized non-U.S. citizens within our borders").

Additionally, the government's attempt to define the relevant historical tradition as disarming "unvirtuous" groups is a misapplication of *Bruen*. AB, 55–57. *Bruen* suggests that if considering carving out exceptions to "the Second Amendment's unqualified

command," 142 S. Ct. at 2126, courts must proceed cautiously, defining those exceptions as narrowly and concretely as possible.

The government's advocacy for a Second Amendment "unvirtuous" person exception, however, is grossly overbroad. AB, 55–57. The category of "unvirtuous" persons is neither "well-defined," *Bruen*, 142 S. Ct. at 2156, nor "narrowly limited," *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 791 (2011). "Unvirtuous" is an elastic, malleable term that, in the wrong hands, could be applied to virtually any group of people—and one that the government could therefore use to "shoehorn" historically protected groups into unprotected status. *Brown*, 564 U.S. at 793. If an open-ended catchall term like "unvirtuous" could justify disarmament, legislatures would be free to "eviscerate" the right to keep and bear arms. *Bruen*, 142 S. Ct. at 2134.

What's more, applying the "unvirtuous" label would require precisely the "judge-empowering interest-balancing inquiry" that *Bruen* forbids. 142 S. Ct. at 2129. Rather than ask whether founding-era laws prohibited firearm possession by "unvirtuous" people—a category broad enough to sweep in almost anyone—the Court must ask whether such laws, like § 922(g)(1), denied firearms to those whose prior commission

26

of a crime suggested they might pose a danger to others if armed. Any other approach risks embroiling courts in "independent means-end scrutiny under the guise" of a historical comparison. *Id.* at 2133 n.7.

Felon-disarmament laws were simply unknown to the founding generation. There was no "historical tradition" in 1791 of barring felons from possessing firearms, and more recent legislative enactments cannot supplant the understanding of the right to keep and bear arms that prevailed when the Second Amendment was enacted. The Court should find § 922(g)(1) unconstitutional, reverse Mr. Whitney's conviction, and remand with instructions to dismiss the indictment.

## Conclusion

The Court should reverse Mr. Whitney's conviction because 18 U.S.C. § 922(g)(1) is unconstitutional. Alternatively, the Court should (1) accept the parties' concessions that reversal and remand of the standard conditions of supervision and the mental health special condition are required under *Nishida* and *Montoya*; (2) clarify the constitutionality of the special gang condition; and (3) reverse and remand Mr. Whitney's incarceration term with instructions that the

district court correct its guideline calculation errors and consider the

unexecuted parole decision as a grounds for a further variance.

Dated: December 1, 2023.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*s/ Amy B. Cleary*
Amy B. Cleary
Assistant Federal Public Defender

28

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-10326

I am the attorney or self-represented party.

**This brief contains** | 5,254 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Amy B. Cleary | **Date** | 12/01/2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 22-10326

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Mr. Stephon Whitney, #26534-509
FCI Victorville Medium I
P.O. BOX 3725
Adelanto, CA 92301

**Description of Document(s)** *(required for all documents)*:

Appellant Stephon Whitney's Reply Brief

**Signature** | s/ Amy B. Cleary | **Date** | Dec 1, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*